## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN LASS, as an individual and as a representative of the classes,<br><br>        Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., and BAC HOME LOANS SERVICING, L.P.,<br><br>        Defendants. | Case No.: _____<br><br><br>**COMPLAINT – CLASS ACTION**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff Susan Lass ("Plaintiff"), on behalf of herself and the putative classes set forth below, and in the public interest, brings the following Complaint against Defendants Bank of America, N.A. ("BOA") and BAC Home Loans Servicing, L.P. ("BAC Servicing") (collectively, "Defendants" or "Bank of America").

### PRELIMINARY STATEMENT

1.      Plaintiff and the putative class members currently have or formerly had loans or lines of credit with Defendants, secured by their residential property, and were required to purchase flood insurance by Defendants.

2.      Defendants have systematically violated the legal rights of Plaintiff and other putative class members in two fundamental respects, as set forth below.

3.      First, Defendants unfairly, unjustly, and unlawfully forced Plaintiff and other borrowers to purchase and maintain flood insurance for their property in amounts greater than required by law, greater than required by their mortgage agreements, and greater than Defendants' financial interest in their property, without any reasonable basis or justification.

4.      Second, Defendants also have unfairly, unjustly, and unlawfully profited from force-placing flood insurance on Plaintiff's property and the property of other borrowers, by charging Plaintiff and other borrowers amounts in excess of the net costs incurred by Defendants for such flood insurance and by accepting kickbacks, commissions, or "other compensation" for themselves and their affiliates in connection with force-placed (also known as lender-placed) flood insurance.

5.      Defendants engaged in this conduct in bad faith, knowing that their actions were inconsistent with applicable law, reasonable commercial standards of fair dealing, and the reasonable expectations of borrowers upon originating their mortgages.

6.      Based on Defendants' conduct as described herein, Plaintiff asserts a federal claim against Defendants under the Real Estate Settlement Procedures Act ("RESPA") and an equitable claim against Defendants for unjust enrichment/money had and received. Plaintiff asserts these claims in Counts 1 and 2 of her Complaint on behalf of a Putative Nationwide Class consisting of all persons who were charged for lender-placed flood insurance by Defendants and who paid such charges, in whole or in part, within the applicable limitations period.[1]

7.      Plaintiff also asserts claims in Counts 3 and 4 of her Complaint for breach of the covenant of good faith and fair dealing and breach of contract. Plaintiff asserts these claims on behalf of a Putative Massachusetts Class consisting of all persons who have or had loans or lines of credit with Defendants secured by their property and were required by Defendants to purchase or maintain flood insurance on their property in the

---

[1] RESPA provides for a one-year limitations period. *See* 12 U.S.C. § 2614. The limitations period for Plaintiff's unjust enrichment claim is six years. *See* Mass. Gen. Laws ch. 260, § 2.

State of Massachusetts within six (6) years prior to this action's filing date through the date of final disposition of this action.

8.      Plaintiff and the Putative Classes seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Defendants' unlawful conduct, as described herein.

## THE PARTIES

9.      Individual and representative Plaintiff Susan Lass resides in Rehoboth, Massachusetts, and is a member of the Putative Classes defined below.

10.     Defendant BOA is a national banking association headquartered in Charlotte, North Carolina.  BOA does business in the State of Massachusetts and several other states throughout the country.

11.     Defendant BAC Servicing is a wholly owned subsidiary of BOA that services loans originated and purchased by BOA, including mortgage loans and lines of credit to Massachusetts homeowners and homeowners in other states.  At all relevant times, BAC Servicing's conduct was approved, authorized, enabled, and ratified by BOA. BAC Servicing is headquartered in Calabasas, California.

## JURISDICTION AND VENUE

12.     This Court has federal question jurisdiction over Plaintiff's RESPA claim pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, this Court has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of Massachusetts, and Defendants are citizens of different states.  The amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of the each of the Putative Classes.

3

13.     Venue is proper in the United States District Court, District of Massachusetts, pursuant to 28 U.S.C. § 1391. Plaintiff resides in Massachusetts and Defendants regularly conduct business in Massachusetts. Further, assignment of this action to the Eastern Division is appropriate pursuant to Local Civil Rule 40.1 because Plaintiff resides in Bristol County.

### FACTUAL ALLEGATIONS

14.     On February 18, 1994, Plaintiff obtained a mortgage loan from Residential Mortgage Corporation ("RMC") in the amount of $40,000, secured by a mortgage ("Mortgage") on her homestead. BOA later acquired this Mortgage, and is the current lender-in-interest to Plaintiff's Mortgage. BAC Servicing services Plaintiff's Mortgage on behalf of BOA. The current principal balance of Plaintiff's mortgage loan is less than $28,000, and she does not have any other loans or lines of credit secured by her property.

15.     Because Plaintiff's home falls within a Special Flood Hazard Area ("SFHA"), federal law requires flood insurance on her home, for the term of her mortgage loan, "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act, *whichever is less*." 42 U.S.C. § 4012a(b)(1) (emphasis added). Unless flood insurance is maintained on her home in this amount, a federally-regulated lender may not make, increase, renew, or extend any loan secured by her property.

16.     Consistent with this federal mandate, RMC required Plaintiff to obtain flood insurance in the amount of her principal balance as a condition of her loan settlement. This amount of coverage was deemed adequate by RMC under both federal

4

law and the terms of her Mortgage, which generically provides that "insurance shall be maintained in the amounts and for the periods that Lender requires."

17.     Pursuant to Paragraph 2 of her Mortgage, Plaintiff's yearly flood insurance premiums are escrowed. Plaintiff was required to pay a portion of these premiums in advance at the time her loan was originated, and these premium charges were reflected on her HUD-1 settlement statement.

18.     Plaintiff has continuously maintained flood insurance on her home in an amount sufficient to cover her principal balance. In 2007, Plaintiff voluntarily elected to increase her flood insurance coverage to $100,000.     This amount of coverage substantially exceeds federal requirements.

19.     Shortly after Bank of America acquired Plaintiff's Mortgage, however, it sent Plaintiff a form letter dated November 16, 2009 ("Initial Form Letter"), contending that the flood insurance coverage on her property was "not adequate." According to this Initial Form Letter, Plaintiff was required to increase her flood insurance coverage by $145,086 (from $100,000 to more than $245,000). This Initial Form Letter also stated:

> To maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (2) the replacement value of the improvements to your property (typically based on the amount of hazard insurance we understand you have purchased for the property).

20.     This Initial Form Letter was deceptive and misleading. To justify its flood insurance requirements, Bank of America claimed that "you are required by the terms of your mortgage/deed of trust and/or Federal law to have adequate flood insurance on your Property." However, Bank of America's coverage requirements are inconsistent with federal law because they do not give the borrower the option to insure to the principal

5

balance of the loan.  Further, Plaintiff's Mortgage does not require coverage equal to the lesser of $250,000 or the replacement cost value of her home.

21.     Conspicuously, Bank of America's Initial Form Letter did not explain why Plaintiff's existing amount of flood insurance coverage was "not adequate." Contrary to Bank of America's representations, Plaintiff's existing flood insurance coverage was not inadequate under federal law or her Mortgage.

22.     In the Initial Form Letter,  Bank of America further informed Plaintiff that if she did not obtain the additional coverage demanded by Bank of America by January 4, 2010, (1) BAC Servicing may purchase such additional coverage for her "through agencies that are affiliates of Bank of America, N.A.", (2) "Bank of America, N.A. and its affiliates may receive a commission or other compensation in connection with obtaining this coverage", and (3) the "premium may be more expensive and will likely provide less coverage" than insurance she could obtain by herself.  Bank of America also suggested that Plaintiff contact BOA's affiliate, Banc of America Insurance Services, Inc., to purchase the additional insurance and avoid having the insurance force-placed upon her.

23.     After sending Plaintiff this Initial Form Letter, Bank of America sent Plaintiff a second form letter dated December 14, 2009 ("Second Form Letter").  This Second Form Letter claimed that "you do not have enough current flood insurance on the property", and repeated Bank of America's demand that Plaintiff obtain an additional $145,086 in coverage.

24.     Approximately one month later, Bank of America sent Plaintiff a third form letter dated January 10, 2010 ("Third Form Letter").  This Third Form Letter

6

advised Plaintiff that Bank of America had purchased additional flood insurance coverage for Plaintiff's property in the amount of $145,086 (backdated for the period from November 1, 2009 – November 1, 2010), and indicated that Bank of America would charge her $748.10 for the cost of this additional insurance. In this letter, Bank of America claimed that "**BAC HOME LOANS HAS PURCHASED LENDER-PLACED FLOOD INSURANCE TO PROTECT ITS INTEREST IN THE PROPERTY.**" However, Bank of America's financial interest in the property already was fully protected by Plaintiff's existing $100,000 policy. Moreover, the Third Form Letter stated that the purchased coverage was not intended to protect Plaintiff's equity interest in the property.

25.     On or about September 19, 2010, Bank of America sent Plaintiff another form letter ("Notice of Intent to Renew"), threatening to renew her force-placed flood insurance coverage for another term at her expense. This Notice of Intent to Renew falsely suggested that Bank of America would purchase renewal coverage in the amount of Plaintiff's principal balance (28,335.00 at the time), and stated: "This insurance may provide less coverage than was in effect previously." However, when Bank of America subsequently renewed her flood insurance coverage, it actually purchased *more* coverage than was in effect previously.

26.     In a subsequent form letter dated November 7, 2010 ("Notice of Renewal"), Bank of America indicated that it had purchased a new flood insurance policy for Plaintiff's property in the amount of $149,998, at a cost of $779.94. Similar to the Third Form Letter that Plaintiff received on January 10, 2010, this Notice of Renewal claimed that "**BAC HOME LOANS HAS PURCHASED LENDER-PLACED**

7

**FLOOD INSURANCE TO PROTECT ITS INTEREST IN THE PROPERTY**", and further asserted that this coverage was not intended to protect Plaintiff's equity interest in the Property. In addition, the Notice of Renewal stated that "Bank of America, N.A. and its affiliates may receive a commission or other compensation in connection with obtaining this coverage."

27.     This renewal policy, like the original force-placed policy that Bank of America purchased, was wholly unnecessary. At the time Bank of America purchased this renewal policy, Plaintiff continued to maintain a separate flood insurance policy on her home in the amount of $100,000.

28.     Shortly after Bank of America renewed Plaintiff's flood insurance, her mortgage payments skyrocketed from $666.66 per month to $879.52 per month. This increase was precipitated, in large part, by an alleged escrow "shortage" created as a result of the force-placed flood insurance coverage that Bank of America purchased for Plaintiff's property out of her escrow account. As of November 2010, the escrow portion of Plaintiff's mortgage payment was $603.24, and represented more than two-thirds of her overall mortgage payment. By contrast, her principal and interest was only $276.28.

29.     The increased mortgage payments that Plaintiff has suffered impose a significant financial hardship on her. However, in order to avoid losing her home to foreclosure, she has continued to pay her mortgage payments in full, including the escrow portions of those payments attributable to the force-placed flood insurance coverage that Bank of America purchased for the property.

30.     On March 7, 2011, Plaintiff's experience with Bank of America was the subject of an investigative news report by WBZTV in Boston. *See*

http://boston.cbslocal.com/2011/03/07/bank-of-america-faces-flood-insurance-

complaints/ (last visited March 29, 2011).   In response, a number of viewers posted

comments indicating that they had experienced the "same issue" and had been told the

"same information" by Bank of America.[2]

## CLASS ACTION ALLEGATIONS

31.    Plaintiff  asserts  her  RESPA  claim  in  Count  1  and  her  unjust

enrichment/money had and received claim in Count 2 on behalf of a Putative Nationwide

Class defined as follows:

> **Proposed Nationwide Class:**  All persons who were charged for lender-
> placed  flood  insurance  by  Defendants  and  who  paid  such  charges,  in
> whole or in part, within the applicable limitations period.

32.    Plaintiff  asserts  her  claims  for  breach  of  the  covenant  of  good  faith  and

fair dealing (Count 3) and breach of contract (Count 4) on behalf of a Putative Class of

Massachusetts homeowners defined as follows:

> **Proposed Massachusetts Class:**  All persons who have or had a loan or
> line  of  credit  with  Defendants  that  was  secured  by  their  residential
> property  and  were  required  by  Defendants  to  purchase  or  maintain  flood
> insurance  on  their  property  in  the  State  of  Massachusetts  within  six  (6)
> years prior to this action's filing date through the date of final disposition
> of this action.

33.    Numerosity:   The  Putative  Classes  are  so  numerous  that  joinder  of  all

Class members is impracticable.   Plaintiff is informed and believes that during the

---

[2] The following comments, among others, were posted on WBZTV's website after the
story aired:

- "I also have had the same issue and got the run around when I contacted BOA."

- "I am having this issue as well.  I am currently being told the same information
  and want to know what I can do to fight it."

- "We have the same issue every year. We live right on the water and our condo
  association carries 1 million dollars worth of flood insurance and they put on an
  additional $145,000. I have to call and fight them every year. That's on[e] of the
  reasons we refer to them as Bank of Business!! FYI I live in MA."

9

relevant time period, hundreds and likely thousands of Defendants' customers satisfy the definition of the Putative Classes.

34.    Typicality:    Plaintiff's claims are typical of the members of the Putative Classes.  Plaintiff is informed and believes that: (1) her loan and mortgage documents were typical of those of other Putative Class members; (2) the form flood insurance notice letters she received were typical of those received by other Putative Class members; (3) Defendants treated her consistent with other Putative Class members in accordance with Defendants' policies and practices; (4) it was typical for Defendants to require borrowers to purchase and maintain flood insurance in amounts greater than required by law, greater than required by their mortgages, and greater than required to insure the amount of funds extended, without any reasonable basis or justification; and (5) it was typical for defendants and their affiliates to accept kickbacks, commissions, or other compensation in connection with lender-placed flood insurance. Defendants' flood insurance requirements (calling for coverage equal to replacement cost value or the NFIP maximum of $250,000) are the same for all borrowers, regardless of individual circumstances, and Defendants' form letters informing borrowers of these requirements are the same or substantially similar for all borrowers.  Further, Defendants and their affiliates received uniform commissions and "other compensation" in connection with force-placed flood insurance that were not specific to particular borrowers.

35.    Adequacy:    Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

10

36.    Commonality:  Common questions of law and fact exist as to all members

of the Putative Classes and predominate over any questions solely affecting individual

members of the Putative Classes, including but not limited to:

      a.  Whether federal law requires Defendants' customers to purchase and maintain flood insurance in amounts greater than necessary to secure the amount of funds extended under a home loan or line of credit;

      b.  Whether Defendants' form letters to borrowers misrepresent federal flood insurance requirements;

      c.  Whether the loan and mortgage documents relied upon by Defendants clearly, conspicuously, adequately, and meaningfully disclose the amount of flood insurance that Defendants require of customers, and authorize Defendants to demand and/or force-place flood insurance in amounts greater than necessary to secure the amount of funds extended;

      d.  Whether Defendants violated RESPA by accepting kickbacks, commissions, or "other compensation" in connection with lender-placed flood insurance;

      e.  Whether Defendants were unjustly enriched by the conduct described in this Complaint;

      f.  Whether Defendants owe their customers a duty of good faith and fair dealing, and if so, whether Defendants breached this duty by, *inter alia*, (i) demanding flood insurance in amounts greater than necessary to secure the amount of funds extended; and (ii) obtaining kickbacks, commissions, or "other compensation" for themselves and their affiliates in connection with lender-placed flood insurance policies that were purchased through affiliate entities rather than at arm's length;

      g.  Whether Defendants breached their contracts with customers by demanding unauthorized amounts of flood insurance or amounts that were not properly and adequately disclosed in such contracts;

      h.  The appropriateness and proper form of any declaratory or injunctive relief; and

      i.  The appropriateness and proper measure of compensatory damages, restitution, and/or other monetary relief.

37.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

38.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary flood insurance premiums and related charges that are readily calculable from Defendants' records and other class-wide evidence.  Members of the Putative Classes do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of the Putative Class members' claims in a single forum in Massachusetts.

39.     Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23.  The names and addresses of the Putative Class members are available from Defendants' records.

12

## FIRST CLAIM FOR RELIEF
## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT
### 12 U.S.C. § 2601 *et seq.*

40.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

41.     Plaintiff's mortgage loan is a federally-regulated mortgage loan subject to the requirements of RESPA, 12 U.S.C. § 2601 *et seq.*

42.     12 U.S.C. § 2607(a) provides: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

43.     12 U.S.C. § 2607(b) further provides: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

44.     Defendants have violated the foregoing RESPA provisions by virtue of their conduct as set forth above in connection with lender-placed flood insurance.

45.     The "[p]rovision of services involving hazard, *flood*, or other casualty insurance" incident to a federally-regulated mortgage loan constitutes a "settlement service" for purposes of RESPA. *See* 24 C.F.R. § 2500.2(b) (emphasis added).

46.     Defendants and their affiliates have unlawfully accepted fees, kickbacks, commissions, or other things of value in connection with an agreement or understanding to purchase lender-placed flood insurance from their lender-placed flood insurance provider.

13

47.     Defendants and their affiliates have unlawfully accepted a portion, split, or percentage of the premiums charged for lender-placed flood insurance, without actually performing commensurate services.

48.     Defendants' unlawful conduct in violation of RESPA is evidenced by, among other things, Defendants' own form letters, which provide that "Bank of America, N.A. and its affiliates may receive a commission or other compensation in connection with obtaining this [lender-placed flood insurance] coverage."

49.     Defendants' unlawful conduct in violation of RESPA is further borne out by published news reports, including a lengthy investigative report in the *American Banker* magazine, entitled "Ties to Insurers Could Land Mortgage Servicers in More Trouble. *See* http://www.americanbanker.com/issues/175_216/ties-to-insurers-servicers-in-trouble-1028474-1.html?zkPrintable=1&nopagination=1 (last visited March 30, 2011).

50.     Plaintiff and the Nationwide Class are entitled to statutory damages for Defendants' violations of 12 U.S.C. § 2607(a)-(b) in an amount equal to three times the amount of premiums they paid for lender-placed flood insurance. *See* 12 U.S.C. § 2607(d)(2).

51.     Plaintiff and the Nationwide Class are also entitled to recover their attorneys' fees and costs of this action pursuant to 12 U.S.C. § 2607(d)(5).

52.     In addition, Plaintiff and the Nationwide Class are entitled to a declaration that Defendants' actions violate RESPA, and corresponding injunctive relief enjoining defendants from engaging in further such violations.

14

53.     Plaintiff's RESPA claim is timely.  Plaintiff filed this action within one year of the date that she began paying Bank of America for lender-placed flood insurance.

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT/MONEY HAD AND RECEIVED

54.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

55.     Defendants and their affiliates have been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.

56.     Defendants received a benefit from Plaintiff and the other Nationwide Class members in the form of payment for force-placed flood insurance, and Defendants and their affiliates retained a portion of these payments as kickbacks, commissions or "other compensation."

57.     Retention of these payments by Defendants and their affiliates would be unjust and inequitable.  Federal law only allows lenders and servicers to "charge the borrower for the cost of premiums and fees *incurred* by the lender or servicer for the loan in purchasing the insurance." 42 U.S.C. § 4012(e)(2); *see also* 12 C.F.R. § 22.3. Defendants abused their discretion to pass through costs for force-placed flood insurance, by charging Plaintiff and other Nationwide Class members amounts in excess of the net costs incurred by Defendants for such flood insurance and by retaining at least a portion of the premium payments as kickbacks, commissions or "other compensation" for themselves and their affiliates.

58.     The kickbacks, commissions and "other compensation" that Bank of America and its affiliates received in connection with force-placed flood insurance were

15

not legitimately earned, and came at the ultimate expense of Plaintiff and other members of the Nationwide Class who had flood insurance force-placed on them by Bank of America.

59.     Because it would be unjust and inequitable for Defendants and their affiliates to retain such payments, Plaintiff and the Nationwide Class are entitled to restitution of all monies unjustly and inequitably retained. Defendants and their affiliates cannot retain these payments in good conscience.

### THIRD CLAIM FOR RELIEF
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

60.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

61.     Defendants owed Plaintiff and the Massachusetts Class a duty of good faith and fair dealing, by virtue of Defendants' contractual relationship with Plaintiff and the Massachusetts Class members.

62.     Defendants breached this duty by, among other things: (1) misrepresenting federal flood insurance requirements, (2) misrepresenting the requirements of Plaintiff's Mortgage and other mortgage agreements, (3) demanding and/or force-placing more flood insurance than required by federal law or the relevant loan and mortgage documents, (4) unreasonably exercising in bad faith any purported discretionary authority Defendants claim they were afforded under the loan and mortgage documents, (5) imposing contractual requirements that did not exist or that exceeded the requirements disclosed in the relevant contracts, and (6) charging borrowers sham "costs" for flood insurance that did not reflect the true cost to Bank of America because a portion of such

16

"costs" were retained by Bank of America and its affiliates (or kicked back to them) as commissions or "other compensation".

63.     Defendants willfully engaged in the foregoing conduct in bad faith, for the purpose of (i) unfairly and unconscionably maximizing revenue from borrowers; (ii) generating commissions, interest, fees, and "other compensation" for BOA and its affiliates; (iii) providing a ready-made customer base for BOA's captive insurance company; (iv) gaining unwarranted contractual and legal advantages; and (v) depriving Plaintiff and other Massachusetts Class members of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase flood insurance coverage in excess of the funds extended to them.

64.     Bank of America's financial incentives in connection with force-placed insurance have led it "to force-place excessive insurance and overcharge consumers for policies         that         provide         minimal         benefit[.]"         *See* http://www.americanbanker.com/issues/175_216/ties-to-insurers-servicers-in-trouble-1028474-1.html?zkPrintable=1&nopagination=1  (last visited March 30, 2011).

65.     As a result of Defendants' breaches of the covenant of good faith and fair dealing, Plaintiff and the Massachusetts Class have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance premiums, escrow charges, interest payments, and other charges, and unnecessary burdens on their property rights.

66.     Plaintiff and the Massachusetts Class are entitled to recover these damages and other appropriate relief from Defendants.

17

## FOURTH CLAIM FOR RELIEF
### BREACH OF CONTRACT

67.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

68.     BOA is the lender-in-interest to Plaintiff's Mortgage and is bound by the terms of that Mortgage.

69.     Plaintiff's Mortgage does not require flood insurance in an amount greater than the unpaid principal balance on the loan.

70.     The amount of flood insurance that was required upon origination of the loan was equal to the principal balance of Plaintiff's loan.

71.     Defendants breached the Mortgage by requiring Plaintiff to obtain flood insurance in excess of her principal balance and by force-placing flood insurance in excess of her principal balance.

72.     Defendants' breach was willful and not the result of mistake or inadvertence. Defendants systematically and pervasively required other members of the Massachusetts Class to obtain flood insurance in excess of the amount required under their mortgage agreements.

73.     As a direct result of Defendants' unlawful conduct, Plaintiff and the Massachusetts Class have suffered damages in the form of increased insurance premiums, escrow charges, interest payments, and other charges, and unnecessary burdens on their property rights.

74.     Plaintiff and the Massachusetts Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

## PRAYER FOR RELIEF

75.     WHEREFORE, Plaintiff, on behalf of herself and the Putative Classes,

prays for relief as follows:

A.     Permitting Plaintiff to amend her Complaint, at an appropriate time, to add other Putative Class members as named plaintiffs and/or to add a claim under Mass. Gen. Laws ch. 93A *et seq.* or other applicable authority;

B.     Determining that this action may proceed as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure;

C.     Designating Plaintiff's counsel as counsel for the Putative Classes;

D.     Designating Plaintiff as class representative of the Putative Classes;

E.     Issuing proper notice to the Putative Classes at Defendants' expense;

F.     Declaring that Defendants' conduct violated RESPA and that Defendants were unjustly enriched by such conduct;

G.     Declaring that Defendants' conduct violated the terms of its contracts, and breached the covenant of good faith and fair dealing;

H.     Declaring that Defendants acted willfully in deliberate or reckless disregard of applicable law and the rights of Plaintiff and the Putative Classes;

I.     Awarding appropriate equitable relief, including but not limited to restitution and an injunction requiring Defendants to reverse all unlawful, unfair, or otherwise improper charges for insurance coverage, allowing customers to close loans or credit lines without first paying premiums for flood insurance that were not necessary or required by law, prohibiting Defendants from imposing unfair and unlawful flood insurance requirements on borrowers, prohibiting Defendants from earning commissions for themselves or affiliated entities on force-placed flood insurance policies, and requiring Defendants

19

to cease and desist from engaging in further unlawful conduct in the future;

J.   Awarding actual damages, statutory damages, punitive damages, and interest;

K.   Awarding reasonable attorneys' fees and costs to the full extent permitted by law; and

L.   Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

76.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Putative Classes demand a trial by jury.

Respectfully submitted,

Dated: April 1, 2011

KEANE, KLEIN & DUFFEY

*s/Thomas W. Duffey*
Thomas W. Duffey, MA Bar No. 563616
1 Church Court
Boston, MA 02129
Telephone: (617) 242-8383
Fax: (617) 242-8313

*and*

NICHOLS KASTER, PLLP
Paul J. Lukas, MN Bar No. 22084X*
E. Michelle Drake, MN Bar No. 0387366*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
  *(*pro hac vice* applications forthcoming)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASSES