## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN LASS, as an individual and as a representative of the classes,<br><br>        Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A. and BAC HOME LOANS SERVICING, L.P.,<br><br>        Defendants. | Civil Action No. 11-10570-WGY |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

This is a straightforward case involving issues of law appropriately decided on a motion to dismiss. Plaintiff Susan Lass ("Plaintiff" or "Lass") is the mortgagor on a mortgage loan serviced by Defendant BAC Home Loans Servicing, L.P. ("BHLS"). Lass's mortgage requires that she maintain flood insurance, "in the amounts and for the periods" required by her lender. In late 2009, BHLS sent Lass a letter informing her that her existing flood insurance coverage was less than what BHLS required. In that same letter, BHLS stated that Lass must purchase additional insurance so that her flood insurance coverage would be equal to the amount of hazard insurance on her property. After Lass failed to purchase the additional coverage herself, thereby breaching her mortgage agreement, BHLS purchased the coverage and charged it to Lass's account. Lass claims that as a result of this force-placement, BHLS received a commission. Lass now brings suit against BHLS and its affiliate, Bank of America, N.A. ("BANA") (collectively, "Defendants") for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Real Estate Settlement Procedures Act ("RESPA"), and unjust enrichment. Lass's claims fail as a matter of law and should be dismissed.

First, the plain language of the mortgage gives BHLS discretion to determine the amount of flood insurance Lass must maintain. She must maintain flood insurance coverage "in the amounts and for the periods" BHLS requires. Because Plaintiff cannot escape the plain meaning of her mortgage's terms, her breach of contract claim fails. Her claim for breach of the covenant of good faith and fair dealing is based on the same misreading of her mortgage, and fails for the same reason.

Second, Plaintiff's RESPA and unjust enrichment claims have no basis in either law or fact. RESPA Section 8, which is the basis for Plaintiff's claims, by its terms only applies to fees incurred in connection with "real estate settlement services." The law is clear that such "settlement services" are only those provided in connection with and at the time of the closing of the loan. Plaintiff's 2010 flood insurance coverage – for which she was assessed charges **well over 15 years after the closing of her loan** – simply is not a "settlement service," and RESPA does not apply. Moreover, Plaintiff's RESPA claim is also untimely, as Plaintiff's complaint was filed over one year after the alleged violation took place.

Third and finally, Plaintiff's claim for unjust enrichment relies on the proposition that Defendants obtained unjust compensation in connection with the force-placement of flood insurance. BHLS's assessment of such a fee cannot be unjust because Plaintiff was given multiple opportunities to purchase the insurance on her own, from the provider of her choice, without incurring any such cost, but chose not to do so. The Complaint, therefore, must be dismissed in its entirety, with prejudice.

# FACTUAL BACKGROUND[1]

Plaintiff, a resident of Rehoboth, Massachusetts, obtained a mortgage loan in the amount

of $40,000 from Residential Mortgage Corporation on February 18, 1994.  Compl. ¶¶ 9, 14.

BANA is the current owner of Plaintiff's debt, and BHLS services her mortgage loan.  *Id.* ¶ 14.

The property securing Lass's mortgage loan is located in an area designated as a special flood

hazard area under the National Flood Insurance Act, therefore requiring flood insurance under

federal law.  *Id.* ¶ 15.  Since origination, Lass has maintained flood insurance in an amount

greater than her principal balance on her home; beginning in 2007, Lass maintained flood

insurance coverage in the amount of $100,000 on the property securing her mortgage.  *Id.* ¶ 18.

> With respect to the amount of flood insurance required, Lass's mortgage states:
>
> Borrower shall keep the improvements now existing or hereafter erected on the
> Property insured against loss by fire, hazards included within the term "extended
> coverage" and any other hazards, **including floods or flooding**, for which Lender
> requires insurance.  **This insurance shall be maintained in the amounts and for
> the periods that Lender requires**. . . . If Borrower fails to maintain coverage
> described above, Lender may, at Lender's option, obtain coverage to protect
> Lender's rights in the Property in accordance with paragraph 7.[2]

Lass Mortgage, Exh. 1 to the Declaration of Matthew G. Lindenbaum ("Lindenbaum Decl.")[3] at

3, ¶ 5 (emphasis added).[4]

On November 16, 2009, Defendants allegedly sent Plaintiff a letter informing her that she

was required to increase her flood coverage by $145,086 so it would be equal to the amount of

---

[1] These factual allegations, taken from Plaintiff's Complaint, are intended only to aid in the Court's resolution of this motion, and Defendants do not admit them by including them here.

[2] Paragraph 7 of the mortgage provides "[i]f Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. . . Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument."  Exh. 1 at 3, ¶ 7.

[3] Hereafter, all references to Exhibits shall refer to Exhibits to the Declaration of Matthew G. Lindenbaum.

[4] This court may properly consider Plaintiff's mortgage and the letters attached as exhibits to this Motion to Dismiss without converting this motion into one for summary judgment, as they are integral to the allegations contained in Plaintiff's Complaint.  *See Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 195 n.2 (1st Cir. 2001).

hazard insurance Plaintiff had purchased (i.e., equivalent to the replacement value of the

improvements to her property).  Compl. ¶ 19.  That letter explained:

> To maintain acceptable insurance, we required that you maintain flood insurance
> coverage in an amount at least equal to the lesser of: (1) the maximum insurance
> available under the NFIP for participating communities, which is currently
> $250,000; or (2) the replacement value of the improvements to your property
> (typically based on the amount of hazard insurance we understand you have
> purchased for the property).

*Id.* ¶ 19; *see also* Exh. 2 at 2.  The letter also allegedly stated that unless Lass obtained the

additional flood insurance coverage by January 4, 2010, BHLS would purchase it for her, and

might do so "through agencies that are affiliates of Bank of America, N.A.," and that BANA or

its affiliates might receive a commission for obtaining the coverage.  Compl. ¶ 22; *see also* Exh.

2 at 3.  On December 14, 2009, BHLS allegedly sent Lass a follow-up letter that again stated that

the flood insurance coverage on Lass's property needed to be increased.  Compl. ¶ 23; *see also*

Exh. 3.  On January 10, 2010, after Lass failed to purchase the additional coverage herself, Bank

of America sent her a third letter informing her that it had purchased the additional flood

insurance itself at a cost of $748.10, which would be charged to her.  Compl. ¶ 24; *see also* Exh.

4.

On September 19, 2010, BHLS allegedly sent Lass another letter informing her that it

intended to renew the flood insurance policy that it had purchased on her property.  Compl. ¶ 25;

*see also* Exh. 5.  On November 7, 2010, BHLS informed Lass that it had purchased a new flood

insurance policy for her property at a cost of $779.94.[5]  Compl. ¶ 26; *see also* Exh. 6.

---

[5] Though not mentioned in the Complaint, it is worth noting that Plaintiff subsequently contacted BHLS regarding
the force-placed policies, and in March 2011 – **prior to** the filing of the Complaint – BHLS cancelled both policies
it had purchased and reversed and refunded each of the charges that had been assessed to Plaintiff's account.

<u>**ARGUMENT**</u>

**I.     <u>Lass's Breach of Contract Claim Must Be Dismissed Because Lass's Mortgage Permitted BHLS to Require Additional Flood Insurance</u>.**

Count IV of Lass's Complaint, which purports to state a claim for breach of contract,

rises or falls on Lass's reading of her mortgage.  Lass claims the mortgage "does not require

flood insurance in an amount greater than the unpaid principal balance on the loan."  Compl. ¶

69.  The plain language of Lass's contract, however, expressly permits BHLS to determine the

amount of flood insurance coverage required on the property.  Under the mortgage, the borrower

is required to "keep the improvements now existing or hereafter erected on the Property insured

against loss by fire, hazards included within the term 'extended coverage' and any other hazards,

**including floods or flooding**, for which Lender requires insurance . . . **in the amounts and for**

**the periods that Lender requires**."  *See* Exh. 1 at 3, ¶ 5 (emphasis added).  The language of the

mortgage and the discretion it provides the lender is clear and unambiguous.

"Interpretation of an unambiguous contract is a matter of law and may, therefore, be done

at the motion to dismiss stage."  *Ruiz v. Bally Total Fitness Holding Corp.*, 447 F. Supp. 2d 23,

28 (D. Mass. 2006).  According to the plain language of Plaintiff's mortgage, Defendants have

the right to choose the amount of flood insurance on the property.  The mortgage itself contains

no limitation (such as the unpaid principal balance, as Plaintiff claims) on this right.

The court in *Custer v. Homeside Lending, Inc.*, 858 So.2d 233 (Ala. 2003), reached a

similar conclusion.  In that case, plaintiffs' mortgage required them to insure the property

"against loss by fire and other hazards, casualties, and contingencies **in such amounts and for**

**such periods as may be required by the Mortgagee**" – language remarkably similar to the

language of Plaintiff's mortgage.  *See id.* at 237 (emphasis added).  The *Custer* plaintiffs'

original lender did not require any flood insurance at first, yet after the defendant purchased the

loan it informed plaintiffs that they would be required to purchase flood insurance for the property, and when plaintiffs failed to do so, purchased it for them and charged them for the coverage. *Id.* at 237-40. There, as here, the plaintiffs alleged that the defendant "breached the mortgage agreement . . . by force-placing flood insurance in amounts that exceeded outstanding mortgage loan balances." *Id.* at 240. The court rejected that argument, concluding "contractually, [the defendant] was given the right to force-place a higher amount, under the provisions of the mortgage authorizing it to force-place insurance against loss 'in such amounts' as it might choose to require." *Id.* at 246-47.

Here, as there, the unambiguous language of Plaintiff's mortgage must control. Because BHLS had the express contractual right to require Plaintiff to purchase insurance coverage in the amount of the replacement value of her property, and the express right "to obtain coverage to protect [its] rights in the Property" if she did not do so herself, Exh. 1 at 3, ¶ 5, Plaintiff's claim for breach of contract must be dismissed.

## II.     Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails.

Count III of the Complaint seeks to recover for a purported breach of the implied covenant of good faith and fair dealing. Again, Plaintiff has failed to state a claim for which relief can be granted. "[T]he scope of the covenant [of good faith and fair dealing] is only as broad as the contract that governs the particular relationship," *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 100 (1st Cir. 2009), and it "does not serve to impute greater rights or impose impractical duties not contemplated in the contractual relationship." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 388 (2004).

**A.      Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails for the Same Reasons as Her Breach of Contract Claim.**

Plaintiff's claim for breach of the covenant relies in large part on her erroneous reading of her mortgage, and should fail for the same reasons her breach of contract claim fails.  Plaintiff contends that BHLS "misrepresent[ed] the requirements of Plaintiff's mortgage," and "impos[ed] contractual requirements that did not exist or that exceeded the requirements disclosed in the relevant contracts."  Compl. ¶ 62.  These contentions fail and cannot support Plaintiff's claim for breach, because Plaintiff's assertion that her mortgage "does not require flood insurance in an amount greater than the unpaid principal balance on the loan, "*Id.* ¶ 69, is wrong for the reasons described in Section I, *supra*.

**B.      BHLS Did Not Misrepresent Federal Law.**

Plaintiff also claims BHLS breached the covenant by "misrepresenting federal flood insurance requirements."  *Id.* ¶ 62. This assertion is based on a single sentence in the November 16, 2009 letter allegedly sent to Plaintiff, which told her that she was "required by the terms of [her] mortgage/deed of trust and/or Federal law to have adequate flood insurance on [her] property."  *See id.* ¶ 20.  This is not a misrepresentation.  As Plaintiff herself admits, "federal law requires flood insurance on her home."  *Id.* ¶ 15.

**C.      BHLS Did Not Unreasonably Exercise Its Discretion Under the Mortgage.**

Plaintiff further asserts that BHLS breached the covenant by "unreasonably exercising in bad faith any purported discretionary authority Defendants claim they were afforded under the loan and mortgage documents."  Compl. ¶ 62.  But all BHLS did was to require insurance in the same amount as Plaintiff's hazard insurance – that is, an amount equal to the replacement cost of Plaintiff's home.  This was hardly "bad faith"; rather, by doing so BHLS ensured that Plaintiff would be protected in the event of a catastrophic flood.

Flood insurance that covers only the amount of the outstanding loan balance provides no funds for a borrower to rebuild and often leaves insufficient funds such that **both** borrower and lender are harmed.  The Federal Emergency Management Agency ("FEMA"), which is charged with implementing the federal government's flood insurance program, in fact, recommends that a lender require flood insurance equal to the full replacement value of the property.[6]  BHLS did nothing more than require insurance in the same as recommended by the FEMA guidance and ensure Plaintiff has the same protection against floods as she does against other hazards. Plaintiff's claim for breach of the covenant of good faith and fair dealing should, therefore, be dismissed.[7]

### III.    Plaintiff Fails to State a Claim Under RESPA Because Lender-Placed Insurance Obtained Fifteen Years After Closing Is Not A "Settlement Service."

Plaintiff asserts Defendants violated 12 U.S.C. §§ 2607(a)-(b) of RESPA by accepting a commission or kickback in connection with the force-placement of flood insurance on her property.  Compl. ¶¶ 42-47.  Plaintiff's RESPA claim fails as a matter of law because both of those provisions, by their terms, apply only to "real estate settlement services"[8] – and the flood

---

[6] *See* Federal Emergency Management Agency, *National Flood Insurance Program: Mandatory Purchase of Flood Insurance Guidelines* 27-28 (September 2007), available at http://www.fema.gov/ library/ viewRecord.do?id= 2954 ("A sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full [replacement cost value (RCV)]. . . . By insuring buildings to the full RCV, the lender and borrower are both better protected."); *cf. Custer*, 858 So.2d at 247-48 (lender did not abuse discretion in force-placing flood insurance sufficient to protect borrower's insurable interest in property).

[7] Plaintiff also asserts that BHLS breached the covenant of good faith and fair dealing by "charging borrowers 'sham' costs for insurance that did not reflect the true cost to Bank of America because a portion of such 'costs' were retained by Bank of America and its affiliates (or kicked back to them) as commissions or 'other compensation.'"  Compl. ¶ 62.  This allegation essentially mirrors Plaintiff's unjust enrichment claim and is addressed in section IV *infra*.

[8] Section 2607(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

Section 2607(b) provides:

insurance charge at issue here, assessed over fifteen years after Plaintiff closed on her loan, is not a real estate settlement service.

RESPA defines a "settlement service" as "any service provided **in connection with a real estate settlement** . . . ." 12 U.S.C. § 2602(3) (emphasis added). The Department of Housing and Urban Development ("HUD"), which is charged with implementing RESPA, has promulgated regulations defining "settlement" as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may also be called 'closing' or 'escrow' in different jurisdictions." 24 C.F.R. § 3500.2(b). By its terms, then, RESPA is narrow in scope, applying only to services rendered at or in connection with the closing of a loan.

Accordingly, as numerous cases have concluded, fees or charges assessed long after a loan's closing do not fall within RESPA's narrow scope. *See, e.g.*, *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996) (RESPA "does not focus on post-settlement fees paid by mortgagors after they have purchased their houses").[9] Indeed, as HUD explained in an opinion letter in 1987, RESPA is "directed to practices preceding or accompanying the settlement and **not to post-settlement practices, such as [insurance policies which are renewed in subsequent years]**." *See* Letter, June 26, 1987, *reprinted in* Paul Barron, Federal Regulation of Real Estate and Mortgage Lending App. 2-84 (1992 & Supp. 1993) (emphasis added).

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

[9] *See also Greenwald v. First Fed. Sav. and Loan Ass'n of Boston*, 446 F. Supp. 2d 620, 625 (D. Mass. 1978), *aff'd*, 591 F.2d 417 (1st Cir. 1979) ("[I]nterest payment on tax escrow accounts, which can continue long after the closing of the mortgage transaction and which can continue to occur during the entire life of the mortgage, is obviously not a settlement practice within the meaning of [RESPA]."); *Fitch v. Wells Fargo Bank, N.A.*, 709 F. Supp. 2d 510, 514-15 (E.D. La. 2010) (payment of a broker price opinion six years after the loan closed was not a "settlement service" because it was not within the time period surrounding the closing of the loan); *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp.2d 578, 590 (E.D.N.Y. 2005) (fees collected "well after the property transfer" fell "outside the scope of RESPA and into the deregulated ambit of the mortgage agreement's terms").

The lender-placed flood insurance at issue here, which was purchased in 2010, is not a "settlement service" governed by RESPA.  Plaintiff's loan was closed by a different lender in 1994, over **fifteen years** before the purchase of the insurance policies in question.  *See* Compl. ¶¶ 14, 24.  Plaintiff's 2010 flood insurance payments are simply not a "service provided in connection with" "the process of executing legally binding documents regarding a lien on property."  24 C.F.R. § 3500.2(b).  The RESPA claim should be dismissed.

Plaintiff's RESPA claim is also untimely under the statute's one-year limitations period. *See* Compl. ¶ 6 n.1 (citing 12 U.S.C. § 2614).  Plaintiff's claim accrued, at the latest, on January 10, 2010, when BHLS told Plaintiff it had purchased flood insurance on her behalf.  *See Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 552-53 (W.D. Pa. 2009) (statute of limitations under RESPA began to run when "plaintiffs learned about the [alleged RESPA violation] in November 2001"); *Estate of Henderson ex rel. Johnson v. Meritage Mortg. Corp.*, 293 F. Supp. 2d 830, 835 (N.D. Ill. 2003) (statute of limitations under RESPA began to run on date Plaintiff discovered alleged violation).  Because this case was not filed until April 1, 2011 – nearly three months after expiration of the limitations period – Plaintiff's RESPA claim is time-barred and should be dismissed.

## IV.    Plaintiff's Claim for Unjust Enrichment Must Be Dismissed.

Finally, Plaintiff seeks to assert a claim for "unjust enrichment" because Defendants and/or their affiliates allegedly "retained a portion of [Plaintiff's flood insurance premium] payments as kickbacks, commissions, or 'other compensation.'"  Compl. ¶ 56.  In addition to being factually wrong,[10] Plaintiff fails to state a claim.  To state a claim for unjust enrichment, Plaintiff must plead: (1) a benefit conferred upon Defendants by Plaintiff; (2) an appreciation or

knowledge of the benefit by Defendants; and (3) the acceptance or retention of the benefit by

Defendants under circumstances which make such acceptance or retention inequitable. *Vieira v.*

*First Amer. Title Ins. Co.*, 668 F. Supp. 2d 282, 294 (D. Mass. 2009).  Plaintiff's unjust

enrichment claim must fail on both the first and third prongs.

      With respect to the first prong, Plaintiff has not adequately pleaded any benefit conferred

upon Defendants by Plaintiff.  She merely alleges generally that "Defendants received a benefit

. . . in the form of payment for force-placed flood insurance, and Defendants and their affiliates

retained a portion of these payments as kickbacks, commissions or 'other compensation.'"

Compl. ¶ 56.  This is wholly speculative and is unsupported by any of the underlying factual

allegations in the Complaint.  Plaintiff fails to specify exactly what sort of compensation

Defendants allegedly earned as a result of force-placing the insurance, or how much they earned

(nor can she, as Defendants did not collect any compensation from the force-placement of

insurance on Plaintiff's loan, *see* Exhs. 4 & 6).  Plaintiff's bare assertion that BHLS was

somehow enriched is nothing more than a "formulaic recitation" of elements the Supreme Court

has held does not satisfy Rule 12.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

      That aside, Plaintiff's claim must also fail on the third prong, as there is nothing "unjust"

about the force-placed insurance policy BHLS purchased for Plaintiff's loan, nor with any

compensation Defendants may have received in connection with that insurance policy.  As

already noted, BHLS had the authority under Plaintiff's mortgage to require Plaintiff to increase

her insurance policy, and to purchase an additional policy itself if necessary. *Supra* section I.

Consistent with its authority under Plaintiff's mortgage, in the November 16, 2009 letter in

which it requested that Plaintiff increase her flood insurance coverage, BHLS stated that it would

---

[10] Defendants expressly deny that they received any commission in connection with the lender-placed insurance
purchased on Plaintiff's behalf – as is indicated on the final pages of both Exhibits 4 and 6, which depict the fees

not purchase a lender-placed insurance policy for her loan unless Plaintiff herself did not obtain

the necessary coverage before January 4, 2010.  Exh. 2 at 1.  BHLS urged Plaintiff "to contact an

insurance agent/company" in order to obtain the coverage, but did not tell her that she needed to

purchase the insurance from any company in particular.  *Id.* at 2.  Plaintiff was specifically

warned that Defendants or their affiliates could receive a fee or other compensation in

connection with any lender-placed insurance, and that the premiums for lender-placed insurance

might "be more expensive [than coverage] that you can obtain on your own."  *Id.* at 3.

Several weeks later, and over two weeks before Plaintiff needed to provide evidence that

she had obtained additional coverage on her own, BHLS again informed Plaintiff that it would

purchase lender-placed insurance only if she did not provide evidence of acceptable coverage

from another insurance company, urged her to contact an insurance agent or company, and

warned her that lender-placed insurance might be more expensive than the coverage she could

obtain on her own.  *See generally* Exh. 3.  BHLS even provided Plaintiff with an estimate of the

cost of lender-placed insurance.  *Id.* at 1.  BHLS then purchased coverage for Plaintiff.[11]

In September 2010, as the first lender-placed policy was nearing its expiration, BHLS

again reached out to Plaintiff, encouraging her to obtain her own coverage and warning her of

the costs of lender-placed insurance.  *See* Exh. 5.  Again, Plaintiff failed to obtain the coverage

on her own from her choice of carrier.

Because BHLS was expressly permitted under Plaintiff's mortgage to require Plaintiff to

increase her flood insurance coverage, Plaintiff was afforded multiple opportunities to purchase

additional flood insurance coverage on her own, and BHLS purchased that coverage only after

---

and premiums assessed to Plaintiff for the coverage.

[11] Lass notably does **not** contend that the flood insurance BHLS purchased exceeded the market rate for such coverage – nor can she.  The cost of the insurance charged to Plaintiff was well within that rate.

she failed to, Plaintiff's claim for unjust enrichment must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants Bank of America, N.A. and BAC Home Loans

Servicing, L.P. respectfully request that the Court dismiss Plaintiff's Complaint with prejudice

for failure to state a claim upon which relief can be granted, and grant such other relief as it

deems just and equitable.

Dated: May 10, 2011

Respectfully submitted,

BANK OF AMERICA, N.A., and BAC
HOME LOANS SERVICING, LP,

By their attorneys,

/s/ John C. Englander
John C. Englander (BBO # 542532)
Matthew G. Lindenbaum (BBO # 670007)
Mark T. Knights (BBO # 670991)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
jenglander@goodwinprocter.com
mlindenbaum@goodwinprocter.com
mknights@goodwinprocter.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, filed through the ECF system, will be electronically sent to those indicated on the Notice of Electronic Filing as registered participants, and hard copies will be sent to those indicated as non-registered participants, on May 10, 2011.

/s/  John C. Englander