# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Lee M. Berger and Alice A. Berger, Individually and on Behalf of All Other Persons Similarly Situated, | ) ) ) | CIVIL ACTION NO. 10-11583 |
| | ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | CLASS ACTION |
| | ) ) | |
| Bank of America, N.A.; and BAC Home Loans Servicing, LP, | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendants.* | ) ) ) | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.     This action is brought by the Plaintiffs, on behalf of themselves and all others similarly situated, to obtain monetary and other appropriate relief for the damages sustained by the Plaintiffs and the members of the Class as a result of Defendants' nationwide practice of forcing mortgagors to maintain more hazard and flood insurance coverage than is required by their mortgage agreements.

2.     Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP service and own millions of loans nationwide which are secured by real estate mortgages.   The mortgages require mortgagors to maintain specific levels of

insurance against hazards such as fire.  In addition, mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" also require mortgagors to maintain specific levels of flood insurance.  Defendants have established and enforce a nationwide policy that requires and compels the mortgagors to maintain greater hazard and flood insurance coverage than required by their mortgages.  This policy is directly contrary to the mortgagors' contractual obligations under the mortgages to maintain the hazard and, in some instances, flood insurance coverage in the amounts specified in the mortgages, and contrary to the Defendants' contractual rights under the mortgages to require the mortgagors to maintain the hazard and, in some instances, flood insurance coverage in the amounts specified in the mortgages.

3.    Defendants enforce their insurance coverage requirement by demanding that the mortgagors obtain the amount of hazard and, in some instances, flood insurance coverage "required" by the Defendants.  If the mortgagors fail to comply with the Defendants' demand, the Defendants purchase hazard or flood insurance coverage so that the total insurance coverage on the real estate will meet the Defendants' insurance coverage "requirements."  In doing so, the Defendants cause the insurance coverage on the real estate to be greater than required by the mortgage agreements.  Defendants then charge the mortgagors for

the cost of that additional insurance by either deducting the insurance premiums from the escrow accounts maintained by the mortgagors with the Defendants or by increasing the mortgagors' monthly mortgage payments.

4.      Defendants or their corporate subsidiaries or affiliates profit from these insurance transactions because Defendants often purchase the insurance from Defendants' own affiliated insurance companies and/or place the insurance through Defendants' own affiliated insurance brokers.   The Defendants' affiliated insurance brokers receive commissions on these insurance transactions and the Defendants' affiliated insurance companies receive the insurance premiums involuntarily paid by the mortgagors.

5.      The Defendants' conduct, as described in detail below, constitutes breaches of the mortgage contracts.  Plaintiffs seek damages for breach of contract for themselves and all other mortgagors who have had more hazard or flood insurance coverage purchased for them by Defendants than is required by their mortgage agreements.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) because the aggregated amount in controversy exceeds $5,000,000 and Plaintiffs are citizens of a State different from Defendants.

7.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a) and (c). A substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

**PARTIES**

8.     Plaintiffs Lee M. Berger and Alice A. Berger ("Plaintiffs") are residents of the Village of Buzzard's Bay in the Town of Bourne, Massachusetts. Plaintiffs are the obligors on a loan secured by a mortgage on their home in Buzzard's Bay that is serviced by Defendant BAC Home Loans Servicing, LP and, upon information and belief, is owned by Defendant Bank of America, N.A.

9.     Defendant Bank of America, N.A. is a Delaware corporation with its principal place of business in Charlotte, North Carolina. Bank of America, N.A. is a national bank. Bank of America, N.A., directly and/or through its subsidiaries, owns and services loans secured by mortgages on real estate located throughout the United States, including Massachusetts. Bank of America, N.A. is located in, conducts business in, and engages in commerce in the Commonwealth of Massachusetts. Defendant Bank of America, N.A., is a subsidiary of Bank of America Corporation, the largest bank holding company in the United States.

10.    Defendant BAC Home Loans Servicing, LP ("BAC Home Loans"), formerly known as Countrywide Home Loans Servicing, LP, is a wholly owned

subsidiary of Defendant Bank of America, N.A.  It is a Texas limited partnership with its principal place of business in Calabasas, California.  BAC Home Loans owns and services loans secured by mortgages on real estate located throughout the United States, including Massachusetts.  BAC Home Loans conducts business in and engages in commerce in the Commonwealth of Massachusetts.

## STATEMENT OF FACTS

### Facts Regarding The Defendants' Nationwide Insurance Coverage Requirements

11.  Defendants have a nationwide policy and practice of requiring mortgagors to maintain hazard insurance coverage in an amount equal to the lesser of: 100% of the insurable value of the improvements on the mortgaged property or the unpaid principal balance of the loan.  However, if the unpaid principal balance on the loan is less than 80% of the insurable value of the improvements, Defendants require hazard insurance coverage equal to at least 80% of the insurable value of the improvements.  That policy and practice of the Defendants is hereinafter sometimes referred to as "Defendants' Hazard Insurance Coverage Requirement."  Defendants apply and enforce Defendants' Hazard Insurance Coverage Requirement even if it exceeds the mortgagor's hazard insurance coverage obligations and the Defendants' hazard insurance coverage rights under the mortgage agreements.

12.     Defendants also have a nationwide policy and practice of requiring mortgagors of mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" to maintain flood insurance coverage in an amount equal to the lesser of 100% of the replacement cost of the insured structure or the maximum flood insurance coverage available under the National Flood Insurance Act of 1968, as amended by, *inter alia*, the National Flood Insurance Reform Act of 1994, 42 U.S.C. §4001, et seq. (the "Flood Insurance Act") (currently $250,000 for residential properties and $500,000 for commercial properties).     That policy and practice of the Defendants is hereinafter sometimes referred to as "Defendants' Flood Insurance Coverage Requirement." The Defendants apply and enforce Defendants' Flood Insurance Coverage Requirement even if it exceeds the mortgagor's flood insurance coverage obligations and the Defendants' flood insurance rights under the mortgage agreements.

13.     The Flood Insurance Act, at 42 U.S.C. §4012a(b)(1), prohibits federally regulated banks from issuing loans secured by mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" unless flood insurance coverage is maintained on the real estate "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of [flood insurance] coverage made available under the

[Flood Insurance] Act with respect to the particular type of property [currently $250,000 for residential properties and $500,000 for commercial properties], *whichever is less*" (emphasis added). The Flood Insurance Act neither requires, nor permits the Defendants to require, mortgagors to maintain greater flood insurance coverage than mandated by the Flood Insurance Act. Despite this fact, Defendants' Flood Insurance Coverage Requirement compels the Plaintiffs and those members of the Class (defined below) whose loans are secured by mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" to maintain greater flood insurance coverage than required by the Flood Insurance Act.

14.     Defendants enforce Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement by demanding that the mortgagors obtain the amount of hazard and, in some instances, flood insurance coverage "required" by the Defendants. If the mortgagors fail to comply with the Defendants' demand, the Defendants purchase hazard or flood insurance coverage so that the total insurance coverage on the real estate will meet Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement. Defendants then charge the mortgagors for the cost of that additional insurance by either deducting the insurance premiums from the escrow accounts maintained by the mortgagors with

the Defendants or by increasing the mortgagors' monthly mortgage payments.

15.     Defendants or their corporate subsidiaries or affiliates profit from these insurance transactions because Defendants often purchase the insurance from Defendants' own affiliated insurance companies and/or place the insurance through Defendants' own affiliated insurance brokers.   The Defendants' affiliated insurance brokers receive commissions on these insurance transactions and the Defendants' affiliated insurance companies receive the insurance premiums involuntarily paid by the mortgagors.

**Facts Regarding the Defendants' Imposition of Their Insurance Coverage Requirements on the Plaintiffs**

16.     On August 18, 2003, Plaintiffs borrowed $130,000 from Fleet National Bank ("the Loan"). The Loan was documented by a promissory note (the "Note"), which was secured by a mortgage agreement ("the Mortgage Agreement" – attached hereto as Exhibit 1) providing Fleet National Bank with a security interest in Plaintiffs' home in Buzzard's Bay, Massachusetts (the "Property"). The Mortgage Agreement is a contract that governs the rights and obligations of the parties to the contract.

17.     Fleet National Bank was subsequently acquired by and merged into Defendant Bank of America, N.A.  Upon information and belief, Defendant Bank of America, N.A. now owns the Note and the security interest established in the

Mortgage Agreement.  Upon information and belief, Defendant Bank of America, N.A. is the successor and assignee of Fleet National Bank of the Note and the Mortgage Agreement.

18.    The Loan and the Mortgage Agreement are now serviced by Defendant BAC Home Loans.  Plaintiffs thus make their monthly loan payments to BAC Home Loans and they communicate exclusively with BAC Home Loans with respect to all matters concerning the Loan and the Mortgage Agreement.  In all of its actions described herein, BAC Home Loans acted on its own behalf and as the duly authorized agent of Defendant Bank of America, N.A. or other owner or assignee of the Note and the Mortgage Agreement.  Defendants are contractually obligated to service the Loan and the Mortgage Agreement pursuant to the terms of the Note and the Mortgage Agreement.

19.    The Mortgage Agreement provides that the Plaintiffs, as mortgagors, must maintain specified hazard and flood insurance on the real estate which is the subject of the Mortgage Agreement.  The Mortgage Agreement provides as follows:

> **4.    Hazard and Flood Insurance....**Borrower shall maintain [hazard insurance] coverage in an amount equal to *the smallest of:* (a) the amount of any obligation having priority over this Mortgage, plus one hundred ten percent (110%) of the unpaid balance of principal and interest on the Note; or (b) the maximum insurable value of the Property, but in no event shall such amount be less than the amount necessary to satisfy any co-insurance requirement contained in the insurance policy; or (c) the maximum amount permitted by applicable law. If the Property is located in an area identified by federal officials as having special flood hazards and where flood

insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood. (emphasis added)

20.    The Property is located in a geographic area that the United States government has designated as having "special flood hazards."    Accordingly, pursuant to the above quoted provision of the Mortgage Agreement, Plaintiffs were required to maintain flood insurance coverage for the Property in an amount equal to *the smallest of* 110% of the unpaid balance of principal and interest on the Note (there being no other obligations having priority over the Mortgage) or the $250,000 maximum flood insurance available under the Flood Insurance Act.

21.    As of July 9, 2010, the outstanding balance owed by the Plaintiffs on the Loan was $99,377. Accordingly, Plaintiffs were required under the Mortgage Agreement to maintain $109,271 ($99,377.19 x 110% = $109,271) of flood insurance coverage on the Property (since that amount is less than the $250,000 flood insurance coverage available under the Flood Insurance Act).

22.    At all times relevant hereto the Plaintiffs maintained $143,000 in flood insurance coverage on the Property, which was substantially greater than 110% of the outstanding balance on the Loan and hence was substantially greater than the amount of flood insurance coverage that the Plaintiffs were contractually obligated to maintain on the Property pursuant to the Mortgage Agreement.

23.    In a letter dated May 6, 2010, entitled "Important Insurance Information Needed" (attached hereto as Exhibit 2), BAC Home Loans requested

that Plaintiffs provide BAC Home Loans with a copy of Plaintiffs' homeowner's

insurance policy.  BAC Home Loans enclosed with that letter a document entitled

"BAC Home Loans Hazard Insurance Requirements" (attached hereto as Exhibit

3).  In this document BAC Home Loans sets forth Defendants' Hazard Insurance

Coverage Requirement described above.  Specifically, the document says:

> *In order to protect the dwelling structure, BAC Home Loans requires that*
> *you maintain hazard insurance.  Below are the minimum requirements:*
>
> \*    \*    \*
>
> - Must ... be in an amount equal to the lower of:
>
>   - 100% of the insurable value of the improvements as established by the insurer or;
>
>   - The unpaid principal balance of the loan
>
>   - Not withstanding [*sic*] the foregoing, if the unpaid principal balance is less than 80% of the insurable value of the improvements, the coverage amount must be at least 80% of the insurable value
>
> \*    \*    \*

(Italics in original)

24.    BAC Home Loans' May 6, 2010 letter further stated that if Plaintiffs

did not present proof of sufficient hazard insurance coverage on the Property, BAC

Home Loans would purchase hazard insurance for the Property and deduct the cost

of that insurance from Plaintiffs' escrow account with BAC Home Loans.  The

letter also states that this new insurance "could be more expensive than [Plaintiffs']

prior policy and will not provide the same coverage." Finally, BAC Home Loans stated: "The insurance may be obtained from an affiliated insurer by our licensed affiliated insurance agency and a commission may be received." Thus, as previously noted, BAC Home Loans or its affiliates could have profited from BAC Home Loans' involuntary purchase of this insurance both if its affiliated broker made a commission from the sale of the insurance and if its affiliated insurer received the premiums charged for the insurance coverage.

25.    After receiving BAC Home Loans' May 6, 2010 letter, Plaintiffs arranged for their insurance agency to forward proof of their hazard and flood insurance coverage on the Property to BAC Home Loans.  Those documents evidenced that Plaintiffs had in force a hazard insurance policy which insured the Property from April 22, 2010 through April 21, 2011, in the amount of $374,000. Those documents also evidenced that Plaintiffs had in force a flood insurance policy which insured the Property from December 15, 2009 through December 15, 2010, in the amount of $143,000.

26.    Plaintiffs also received a second letter from BAC Homes regarding hazard insurance coverage on the Property, dated May 20, 2010.  It was similar to the May 6, 2010 letter described above. Enclosed with that letter was another copy of the document entitled "BAC Home Loans Hazard Insurance Requirements" described above.

27.    Thereafter, BAC Home Loans sent Plaintiffs a document entitled "Second Notice of Flood Insurance Requirement," dated June 27, 2010 (attached hereto as Exhibit 4) (the "Flood Insurance Notice"). In the Flood Insurance Notice BAC Home Loans set forth the previously described Defendants' Flood Insurance Coverage Requirement as follows:

> BAC Home Loans requires flood insurance coverage that is equal to 100% of the replacement cost of the structure based on the lesser of the current amount of hazard insurance for the property, or the maximum available coverage required by the National Flood Insurance Reform Act of 1994 (the Act), which is currently $250,000 for residential and $500,000 for commercial properties.

28.    The Flood Insurance Notice also stated that "a comparison of the amount of flood insurance coverage to the current amount of hazard insurance coverage determined that additional flood insurance is required."

29.    The Flood Insurance Notice further stated that if Plaintiffs did not obtain the additional flood insurance coverage required by Defendants' Flood Insurance Coverage Requirement, BAC Home Loans would purchase $107,000 additional flood insurance on the Property[1] and BAC Home Loans would then deduct the annual insurance premium of $280.88 for that additional flood insurance from Plaintiffs' escrow account.

---

[1]  While not explained in the letter, it is apparent that BAC Home Loans arrived at that $107,000 figure because the amount of flood insurance already maintained by the Plaintiff, $143,000, plus that $107,000, equals the $250,000 maximum available under the Flood Insurance Act.

30.   As with hazard insurance, BAC Home Loans or its affiliates would profit from the placing of the flood insurance.  As the June 27, 2010 letter states, "Please note that our licensed affiliated insurance agency may receive a commission for placing this insurance."

31.   On July 20, 2010, Plaintiffs wrote to BAC Home Loans, again providing documentation that they maintained $143,000 of flood insurance coverage on the Property, which was substantially more flood insurance than was required by the Mortgage Agreement.

32.   In a letter dated July 22, 2010  entitled "Notice of Flood Insurance Coverage" (the "Flood Insurance Coverage Notice") (attached hereto as Exhibit 5) BAC Home Loans stated to Plaintiffs that "we have insured your property, as required by the terms of your mortgage and/or federal law (42USC 4012a, Sec. 102e)."  Specifically, the Notice advised that BAC Home Loans had purchased an additional $107,000 in flood insurance coverage for the Property and that it would charge the insurance premium of $280.88 for that coverage to Plaintiffs' escrow account (which it subsequently did).

33.   BAC Home Loans' purchase of the additional $107,000 in flood insurance coverage for the Property, at Plaintiffs' expense, was neither required by, nor permitted by, the Mortgage Agreement.  As demonstrated above, the Mortgage Agreement requires the Plaintiffs to maintain flood insurance equal to 110% of the

$99,377 outstanding balance of the Loan, which equals $109,271. Accordingly, the $143,000 in flood insurance coverage that the Plaintiffs had maintained on the Property more than satisfied their flood insurance coverage obligation under the Mortgage Agreement and more than fulfilled the Defendants' flood insurance coverage rights under the Mortgage Agreement.

34.   BAC Home Loans' purchase of the additional $107,000 in flood insurance coverage for the Property, at Plaintiffs' expense, was also neither required by, nor permitted by, the Flood Insurance Act. As explained above, the Flood Insurance Act requires the Defendants to require the Plaintiffs to maintain "flood insurance in an amount equal to the outstanding principal balance of the loan or the maximum limit of [flood insurance] coverage made available under the [Flood Insurance] Act with respect to the particular type of property [currently $250,000 for residential properties], *whichever is less.*" (emphasis added). 42 U.S.C. §4012a(b)(1). Since the outstanding balance on the Loan was $99,377, the Flood Insurance Act required the Defendants to require the Plaintiffs to maintain $99,377 of flood insurance on the Property. The Flood Insurance Act neither requires, nor permits, the Defendants to require mortgagors to maintain greater flood insurance coverage than mandated by the Flood Insurance Act.

35.   As a direct result of Defendants' conduct described herein, in breach of the Mortgage Agreement, Plaintiffs have suffered, and without relief from this

Court will continue to suffer, damages in the form of premiums for flood insurance on the Property that they were not required to maintain under the Mortgage Agreement.

## CLASS ACTION ALLEGATIONS

36.   Plaintiffs bring this action on behalf of themselves and all other persons or entities in the United States:

a) who are or were obligors on loans that are or were owned or serviced by either or both of the Defendants; and

b) which loans are or were secured by mortgage agreements[2] that are or were owned or serviced by either or both of the Defendants; and

c) which mortgage agreements required hazard or flood insurance coverage in an amount that was related to the amount of the outstanding balance of the loan – for example, in the amount of the outstanding balance of the loan or a percentage of the outstanding balance of the loan; and

d) for whom Defendants purchased and charged the cost of hazard or flood insurance coverage in excess of the coverage amounts required by the mortgage agreements.

---

[2] The term "mortgage agreements" includes deeds of trust for States in which such instruments are used in a similar manner to mortgage agreements.

37.   All of the persons or entities described in the preceding paragraph are hereinafter referred to as "the Class," "Class Members" or the "Members of the Class."

38.   As Defendants state and admit in their letters and notices to Plaintiffs, the Defendants' conduct with respect to the Plaintiffs, as described herein, was consistent with and pursuant to their uniform, nationwide policy and practice to maintain and enforce Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement.

39.   The Members of the Class are so numerous that joinder of all members is not only impracticable, it is impossible.  Defendants own and service millions of loans secured by real estate mortgages throughout the United States.

40.   Plaintiffs' claims are typical of the claims of the Members of the Class because, like Plaintiffs, each Class Member was forced by the Defendants to pay for more insurance coverage than the Class Member's mortgage agreement required.

41.   Plaintiffs will fairly and adequately protect the interests of the Members of the Class. They have retained counsel highly competent and experienced in class action litigation.

42.   Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual members of

the Class. Among the questions of law and fact common to the Class are:

(a)    whether Defendants could require Members of the Class to maintain insurance in excess of what was required by their mortgage agreements;

(b)    whether Defendants breached the mortgage agreements of Plaintiffs and the Class by purchasing insurance coverage for Plaintiffs and the Class in excess of what was required by their mortgage agreements;

(c)    the proper measure of damages.

43.    The legal question of whether Defendants' conduct of purchasing, and charging the mortgagor for the cost of, hazard or flood insurance coverage in excess of what was required by their mortgage agreements breached the underlying mortgage agreements of Plaintiffs and Class Members is a question of basic contract law that would be the same under the laws of each State in which Class Members reside.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, while the damages that have been suffered by, and that will continue to be suffered by, individual Class members are not insignificant, the expense and burden of individual litigation would make it impossible for Members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action. The Members of the Class can be identified from Defendants'

business records.

45.   The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to the individual Class members which would establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual Members of the Class could as a practical matter be dispositive of the interests of the other Class Members not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

## COUNT I – BREACH OF CONTRACT

46.   Plaintiffs incorporate the above paragraphs by reference.

47.   The mortgage agreements of Plaintiffs and the Class are binding contracts setting out the maximum amount of hazard and flood insurance that Plaintiffs and the Class were required to maintain.

48.   By forcing Plaintiffs and Class Members to buy hazard or flood insurance coverage in excess of the coverage required by their mortgage agreements, Defendants violated and breached the mortgage agreements.

49.   As a direct result of Defendants' breach of contract, Plaintiffs and the Class have been damaged.

50.   Defendants are liable to Plaintiffs and the Class Members for the cost

of the hazard or flood insurance coverage purchased by Defendants for Plaintiffs and the Class Members that exceeded the amount of hazard or flood insurance that the Plaintiffs and Class Members were required to maintain pursuant to their mortgage agreements.

51.   Defendants are also liable to Plaintiffs and the Class Members for any profits, commissions, service fees, premiums or other funds received by Defendants or their affiliates in connection with the hazard or flood insurance coverage purchased by Defendants for Plaintiffs and the Class Members that exceeded the amount of hazard or flood insurance that the Plaintiffs and Class Members were required to maintain pursuant to their mortgage agreements.

52.   Unless the Defendants are permanently enjoined by this Court from enforcing Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement when those requirements exceed the insurance coverage obligations of the Plaintiffs and the Class Members under their mortgage agreements, the Plaintiffs and the Members of the Class will continue to be damaged.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

53.   Plaintiffs incorporate the above paragraphs by reference.

54.   The mortgage agreements of Plaintiffs and the Class are binding

contracts.

55. Each of those contracts contains an implied covenant of good faith and fair dealing.

56. The implied covenant of good faith and fair dealing required each party to the contract to be honest in its dealings and not purposefully to take actions that would unfairly prevent other parties from enjoying their rights or benefits under the contract or disappoint their reasonable expectations.

57. By forcing Plaintiffs and the Class to maintain and pay for hazard or flood insurance coverage in excess of the coverage required by their mortgage agreements, Defendants acted in bad faith and breached the implied covenant of good faith and fair dealing contained in the mortgage agreements.

58. As a direct result of Defendants' breach of the implied covenant of good faith and fair dealing contained in the mortgage agreements, Plaintiffs and the Class have been damaged.

59. Defendants are liable to Plaintiffs and the Class Members for the cost of the hazard or flood insurance coverage purchased by Defendants for Plaintiffs and the Class Members that exceeded the amount of hazard or flood insurance that the Plaintiffs and Class Members were required to maintain pursuant to their mortgage agreements.

60. Defendants are also liable to Plaintiffs and the Class Members for any

profits, commissions, service fees, premiums or other funds received by Defendants or their affiliates in connection with the hazard or flood insurance coverage purchased by Defendants for Plaintiffs and the Class Members that exceeded the amount of hazard or flood insurance that the Plaintiffs and Class Members were required to maintain pursuant to their mortgage agreements.

61.   Unless the Defendants are permanently enjoined by this Court from enforcing Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement when those requirements exceed the insurance coverage obligations of the Plaintiffs and the Class Members under their mortgage agreements, the Plaintiffs and the Members of the Class will continue to be damaged.

**JURY DEMAND**

62.   Plaintiffs demand a trial by jury on all claims so triable.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.    An order allowing this action to proceed as a class action under Fed. R. Civ. P. 23;

2.    Determining that the Defendants' conduct as described herein, and as will be established at trial, breached the mortgage contracts of the Plaintiffs and the Members of the Class;

3.    Determining that the Defendants' conduct as described herein, and as will be established at trial, breached the implied covenant of good faith and fair dealing between Defendants and the Plaintiffs and the Members of the Class;

4.    Awarding Plaintiffs and Members of the Class damages in an amount to be proven at trial, plus interest and costs;

5.    Entering a permanent injunction enjoining the Defendants from requiring the Plaintiffs and the Class Members to maintain more hazard or flood insurance coverage than required by their mortgage agreements;

6.    Awarding counsel for the Plaintiffs and the Class their reasonable attorneys fees and expenses; and

7.    Any such other and further relief which the Court finds just and proper.

Dated: September 17, 2010

Respectfully submitted,


/s/  Edward F. Haber
Edward F. Haber (BBO# 215620)
Michelle H. Blauner (BBO# 549049)
Robert E. Ditzion (BBO# 660962)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA  02109
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
rditzion@shulaw.com

ATTORNEYS FOR THE
PLAINTIFFS AND THE CLASS

EXHIBIT 1

# Exhibit 1

**Fleet Bank**

Bk 17774 Pg294 $11?
Mortgage 10-09-2003 a 12:54p

(for use in CT, FL, MA, ME, PA and RI)

**Principal Loan Amount:** U.S. $          **Maturity Date:**

$130,000.00                               08/22/23

**Borrower(s)/Mortgagor(s):**

LEE M. BERGER
ALICE A. BERGER

**Property Address:**                     **Mailing Address:**

14 EVERETT RD :          : BUZZARDS BAY,  14 EVERETT RD BUZZARDS BAY, MA 02532
MA 02532

THIS MORTGAGE is between each Mortgagor signing below ("Borrower") and the following Mortgagee
("Lender"):

Name of Lender:          FLEET NATIONAL BANK, PRINCIPALLY LOCATED IN RHODE ISLAND

Lender's Address for Notices:   CONSUMER LOAN OPERATIONS
                                315-317 COURT STREET
                                P.O. BOX 3092
                                UTICA, NY 13502

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note in favor of
Lender in the Principal Loan Amount set forth above, which note was dated the same date as this Mortgage and is
due and payable in full by the Maturity Date set forth above (the "Note"), together with interest thereon and all
renewals, extensions, and conversions of or modifications to the Note; the payment of all other sums provided in
the Note or advanced to protect the security of this Mortgage; and the performance of all other covenants and
agreements of Borrower contained herein and in the Note, for consideration paid, Borrower hereby mortgages,
grants, and conveys to Lender, its successors and assigns forever, with statutory power of sale (if applicable) and
with mortgage covenants, the property described in Exhibit A to this Mortgage (the "Property"). This Mortgage
is given on the statutory condition (except in Florida). If the Property is located in New York, Lender's rights
under this Mortgage are in addition to, and not exclusive of, rights conferred under Sections 254, 271, 272 and
291-P of the New York Real Property Law.

PROPERTY UNDER MORTGAGE

The Property includes: all improvements erected on the Property; all of Borrower's rights and
privileges to all land, water, streets, and roads next to and on all sides of the Property (called "easements, rights,
and appurtenances"); all rents from the Property; all proceeds (to the extent necessary to repay the amount
Borrower owes) from the Property, including insurance proceeds and proceeds from the taking of all or any part
of the Property by a government agency or anyone else authorized by law; and all property and rights described
above that Borrower acquires in the future.

OWNERSHIP OF PROPERTY

Borrower promises that Borrower lawfully owns the Property and has the right to mortgage, grant and convey the
Property, and that there are no claims or charges (called "encumbrances") against the Property, except for
encumbrances disclosed to Lender. Borrower is fully responsible for any losses Lender suffers because someone
other than the Borrower has some of the rights in the Property that the Borrower claims, and Borrower will
defend Borrower's ownership of the Property against any such claim of rights.

Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, and Other Charges. Borrower shall promptly pay, when due, the principal
and interest indebtedness secured by the Mortgage and any other charges due under the Note. (PA customers
only; including a late fee in the amount of $ _____ for each late payment).

Recording Copy

21000 Rev. 11/0002   BERGER, LEE M   Record and Return To:
                                     Integrated Loan Services
                                     27 Inwood Road
                                     Rocky Hill, CT 06067   1 of 6         21000A Rev. 11/

Bk 17774    Pg 295  #118213

2.    Application of Payments. Unless otherwise provided in the Note or required by applicable law, all payments received by Lender shall be applied first to interest accrued through the date of payment, then to principal due to the date of payment, then to other charges, if any, that have not been added to principal and, finally, to principal that is not yet due.

3.    Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage, including Borrower's covenants to make payments when due, and will not incur any additional indebtedness under any such mortgage, deed of trust or other security agreement. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property that may attain priority over this Mortgage, and any leasehold payments or ground rents. Borrower will notify all prior mortgagees of Lender's Mortgage.

4.    Hazard and Flood Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require. Borrower shall maintain coverage in an amount equal to the smallest of: (a) the amount of any obligation having priority over this Mortgage, plus one hundred ten percent (110%) of the unpaid balance of principal and interest on the Note; or (b) the maximum insurable value of the Property, but in no event shall such amount be less than the amount necessary to satisfy any co-insurance requirement contained in the insurance policy; or (c) the maximum amount permitted by applicable law. If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender, provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of, and in a form acceptable to, Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

5.    Preservation and Maintenance of Property; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property. If this Mortgage is on a unit in a condominium or planned unit development, Borrower shall perform all of the Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. Borrower shall promptly pay, when due, all assessments imposed by the owners' association or other governing body of any condominium project of which the Property is a part, pursuant to the provisions of the declaration, by-laws, regulations or other constituent document of the condominium project. As long as the owners' association or other governing body maintains a "master" or "blanket" policy on the condominium project that provides insurance coverage against fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then Borrower's obligations under paragraph 4 to maintain hazard insurance coverage on the Property is deemed satisfied and the provisions of paragraph 4 regarding application of hazard insurance proceeds shall be superseded by any provisions of the declaration, by-laws, regulations or other constituent document of the project or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss of the Property, whether to the unit or to common elements, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, with the excess, if any, paid to Borrower.

Recording Copy
Page 2 of 6

25000A Rev. 11/2002

Bk 17774   Pg 296

If the Property is part of a condominium project, Borrower shall not, except after notice to Lender and with Lender's prior written consent, partition or subdivide the Property, or consent to: (a) the abandonment or termination of the project, except for abandonment or termination provided by law in the case of a taking by condemnation or eminent domain; (b) any material amendment of the declaration, by-laws or regulations of the owners' association or other governing body, or equivalent constituent document of the project, including, but not limited to, any amendment that would change the percentage interest of the unit owners in the project; or (c) the effectuation of any decision by the owners' association or other governing body to terminate professional management and assume self-management of the project.

6.   Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced that materially affects Lender's interest in the Property, the Lender, at Lender's option, on notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as Lender deems necessary to protect its interest. Any amounts disbursed by Lender pursuant to this paragraph 6 shall become additional principal indebtedness of Borrower secured by this Mortgage and Borrower shall pay interest on such amounts at the rate in effect from time to time under the Note. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph shall require Lender to incur any expense or take any action hereunder, and any action taken by Lender hereunder shall not be a waiver of, or preclude the exercise of, any of the rights or remedies accorded to Lender.

7.   Inspection. Lender may make or cause to be made reasonable entries on and inspection of the Property provided that Lender shall give Borrower notice prior to such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

8.   Condemnation. The process of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage.

9.   Borrower Not Released; Forbearance By Lender Not A Waiver. Extension of the time for payment or modification of any of the other terms of payment of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify the terms of payment of the sums secured by the Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

10.   Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to the benefit of, the respective successors and assigns of Lender and Borrower. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signed this Mortgage, but does not execute the Note: (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage; (b) is not personally obligated to pay the sums secured by this Mortgage; and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear or make any other accommodations with regard to the terms of this Mortgage and the Note without the Borrower's consent and without releasing the Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

11.   Notice. Except for any notice required under applicable law to be given in another manner: (a) any notice required or permitted to be given to Borrower under this Mortgage shall be sent to Borrower by regular mail addressed to Borrower at the address for notices specified in the Note; and (b) any notice required or permitted to be given to Lender under this Mortgage shall be sent to Lender by regular mail addressed to Lender at Lender's Address for Notices identified at the beginning of this Mortgage. Either party may change its address to which the other party is to send notices by giving the other party notice of the new address in accordance with this paragraph 11. Any notice provided for in this Mortgage shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed in the manner designated herein.

**Recording copy**

Bk 17774   Pg 297 #118213

12.  Governing Law; Severability. The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. Notwithstanding the foregoing, nothing herein shall limit the applicability of federal law to this Mortgage. In the event that any provision of this Mortgage or the Note conflicts with applicable law, the conflicting provision shall be deemed to be amended to afford the Lender the maximum rights allowed by law. No conflict with applicable law shall affect other provisions of this Mortgage or the Note that can be given effect without the conflicting provision and, to this end, the provisions of this Mortgage or the Note are declared to be severable.

13.  Borrower's Copy. Borrower shall be furnished a conformed copy of this Mortgage at the time of execution or after recordation hereof.

14.  Events of Default. Borrower shall be in default under this Mortgage if: (1) Borrower fails to make any payment due under the Note or this Mortgage within 10 days of its due date (60 days, if you paid any prepaid finance charge and this is a secondary mortgage on a 1- to 4-family dwelling located in Connecticut); (2) Borrower breaks any of the promises or agreements in the Note or in this Mortgage; (3) Borrower has made any false or misleading statements in connection with the Note or this Mortgage; (4) a petition is filed by or against any person liable on the Note under any bankruptcy or insolvency law; (5) any person liable on the Note dies or becomes unable to manage his or her affairs; (6) the value of the Property is significantly impaired; (7) anything else happens that Lender reasonably believes affects Borrower's ability to repay the Note; (8) Borrower fails to furnish any updated financial statement or other credit information Lender requests from time to time; or (9) Borrower fails to permit Lender, at Lender's request, to inspect or appraise the Property from time to time.

15.  Acceleration; Remedies. On default, Lender may declare all sums secured by this Mortgage immediately due and payable, and Lender may invoke any of the remedies permitted under applicable law, including the STATUTORY POWER OF SALE, if any. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 15, including, but not limited to, reasonable attorneys' fees to the extent permitted by law. If the Property is located in Florida, Lender shall be entitled to collect all costs and expenses incurred in collection or foreclosure, including attorneys' fees equal to ten percent (10%) of the principal sum or such larger amount as may be reasonable and just, and also all costs, expenses and attorneys' fees incurred in any appellate and bankruptcy proceedings. If Lender invokes a STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage in such order as Lender may determine; and (c) the excess, if any, to the person or persons legally entitled thereto.

16.  Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. On acceleration under paragraph 15 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter on, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

17.  Waiver of Homestead; Dower and Curtesy. When applicable, and as permitted by law, Borrower hereby waives all rights of homestead in the Property and relinquishes all rights of dower and curtesy in the Property.

18.  Release. This Mortgage shall be deemed to be satisfied, and Lender shall give Borrower a discharge therefor, when all sums secured by this Mortgage have been paid in full, and Borrower has paid Lender for the recording cost of filing the satisfaction of mortgage.

19.  New York Lien Law. If the Note and Mortgage are governed by New York law, the Borrower (a) will receive all amounts advanced under the Note subject to the trust fund provisions of Section 13 of the New York Lien Law and agrees to use any money received from Lender under the Note for the purpose of paying the cost of any improvements made to the Property before using the money for any other purpose; and (b) hereby requests exemption pursuant to Section 253 (2) of the New York Tax Law, if applicable.

2)XXXC Rev. 11/2002

Recording Copy
Page 4 of 6

Bk 17774   Pg 298

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien that has priority over this Mortgage to give notice to Lender, at Lender's address set forth at the beginning of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

**NOTICE TO CONSUMER: 1. Do not sign this Mortgage before you read it.**
**2. You are entitled to a copy of this Mortgage.**

IN WITNESS WHEREOF, each of the undersigned has executed this Mortgage under seal this __18TH__ day of __AUGUST__ (month), __2003__ . WE AGREE AND ACKNOWLEDGE THAT WE HAVE RECEIVED TRUE COPIES OF THIS MORTGAGE AND ANY RIDER.

(Signature of Witness One)
Printed Name: Kristina M Tavares

(Mortgagor/Borrower Signature)
Printed Name: LEE M. BERGER

(Signature of Witness Two)
Printed Name:

(Signature of Witness One)
Printed Name: Kristina M Tavares

(Mortgagor/Borrower Signature)
Printed Name: ALICE M. BERGER

(Signature of Witness Two)
Printed Name:

(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

(Signature of Witness Two)
Printed Name:

(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

(Signature of Witness Two)
Printed Name:

(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

(Signature of Witness Two)
Printed Name:

STATE/COMMONWEALTH OF __MASSACHUSETTS__ , COUNTY
__Barnstable__ , SS.                                    Date: __08/18/03__

Then personally appeared before me __LEE M. BERGER, ALICE A. BERGER__

known by me (or satisfactorily proven) to be the Mortgagor(s) named in the foregoing instrument, and acknowledged the execution of such instrument for the purposes contained therein to be his/her/their [circle one] free act and deed. Florida Only: The foregoing instrument was acknowledged before me this _____, _____, by _____, who is personally known _____ or produced _____ as identification.

Notary Public

Print Name: __MOURA U.__

My Commission Expires: __7/__

Florida Only: Notary Public State of Florida Commission
Number: _____

EXHIBIT A
TO
MORGAGE

Date of Mortgage:
08/18/03

Borrower(s)/Mortgagor(s):
LEN M. BERGER
ALICE A. BERGER

| Mortgagee: | Property Address: |
| --- | --- |
| FLEET NATIONAL BANK, | 14 EVERETT RD          BUZZARDS BAY, MA |
| PRINCIPALLY LOCATED IN RHODE ISLAND | 02532 |

The Property is located in ___BUZZARDS BAY___ (city/town), ___BARNSTABLE___ (county),

___MASSACHUSETTS___ (state) and is bounded and described as follows:

(See "Schedule A" attached hereto and made a part hereof.)

Remit all Legal Documents to: ————— Fleet Bank
Consumer Loan Operations
315-371 Court Street
P.O./Box 2092
Utica, NY 13502

### Pennsylvania Certification of Residence

I hereby certify that the precise residence of the Mortgagee, _____.

is: _____

Name _____

Title _____

210002S Rev. 11/2002

Bk 17774   Pg 300

## SCHEDULE A

NAME: LEE M. BERGER

THAT CERTAIN PIECE OF PARCEL OF LAND, AND THE
BUILDINGS AND IMPROVEMENTS THEREON, KNOWN AS

IN THE TOWN OF BUZZARDS BAY
COUNTY OF BARNSTABLE
AND STATE OF MASSACHUSETTS
AND BEING MORE PARTICULARLY DESCRIBED IN A DEED
RECORDED IN BOOK 2824 , PAGE 190
OF THE Barnstable County Registry of Deeds.

BARNSTABLE REGISTRY OF DEEDS

SCHEDA REV 01/2001

EXHIBIT 2

# Exhibit 2

9093
873510498

**Bank of America** ≋

Home Loans

P.O. BOX 961206
FORT WORTH, TX 76161-0206

MAY 6, 2010

003805 - 014363
LEE BERGER
ALICE BERGER
14 EVERETT RD
BUZZARDS BAY, MA 02532-3429

** IMPORTANT INSURANCE INFORMATION NEEDED **

Notification Date:   MAY 6, 2010
Loan Number:         873510498
Property Address:    14 EVERETT RD
                     BUZZARDS BAY MA  02532

Dear Valued Customer:

In our efforts to provide superior service, we continually review our loans to identify issues that might impact our customers and their property. Our recent review of your loan has indicated that we have not received a homeowner's insurance policy. This caused your policy to expire on 04/22/2010.

In order to resolve this matter, we ask that you have your insurance agent forward the homeowner's insurance policy to us immediately. Upon receipt of the policy, we will update the insurance information. The policy should be faxed to our Insurance Department at (800) 293-8158 or you could have the homeowner's insurance policy mailed to us at the following address:

> BAC HOME LOANS SERVICING, LP
> P.O. BOX 961206
> FORT WORTH, TX 76161-0206

It is necessary that we receive the homeowner's insurance policy within 49 days of this letter so that we can implement coverage. Please note that if the policy is not received by that date, we will need to obtain insurance coverages, as outlined in your mortgage contract, to protect the property.

We want you to be aware that the insurance that we would obtain could be more expensive than your prior policy and will not provide the same coverage. While we currently estimate that the insurance would cost $3,413.00, for a coverage amount of $424,000.00, this estimate is subject to change at any time. The insurance may be obtained from an affiliated insurer by our licensed affiliated insurance agency and a commission may be received.

The charges for this insurance, and any state imposed fees, would be paid right from your escrow/impound account. If you do not have an escrow/impound account, one may be established. Please keep in mind that higher insurance charges could cause an increase to the escrow portion of your monthly mortgage payment when your escrow account is next analyzed.

We want to minimize any additional expense or inconvenience to you. Your immediate assistance can help resolve this matter and prevent us from having to place the alternate insurance coverage on your property. If, however, we do not receive a response within 49 days of this letter, we will have to initiate obtaining insurance coverage on your account.

Enclosed is a copy of our insurance requirements for your reference. If you have any questions or need our assistance, please contact our Customer Service Department at (866) 265-3321, Monday through Friday, 8:00 a.m. to 9:00 p.m. Eastern Standard Time.

Sincerely,

Hazard/Flood Insurance Unit

BH001

EXHIBIT 3

# Exhibit 3

## BAC HOME LOANS HAZARD INSURANCE REQUIREMENTS

In order to protect the dwelling structure, BAC Home Loans requires that you maintain hazard insurance. Below are the minimum requirements:

- Must be a fire and extended coverage policy
- Must list your loan number on all policies, billings or other correspondence
- Must not limit or exclude from coverage (in whole or in part) damage from windstorm, hurricane, hail or any other perils that are a part of the extended coverage endorsement
- Must be on REPLACEMENT COST BASIS, where available, and be in an amount equal to the lower of:
  - 100% of the insurable value of the improvements as established by the insurer or;
  - The unpaid principal balance of the loan
  - Not withstanding the foregoing, if the unpaid principal balance is less than 80% of the insurable value of the improvements, the coverage amount must be at least 80% of the insurable value
- Rent loss coverage is required for non-owner - occupied properties
- For coverage amounts of $252,700 or less, the maximum deductible is the higher of $1000 or 1% of the policy's dwelling coverage
- For coverage amount greater than $252,700, the maximum deductible is the higher of $2500 or 1% of the policy's dwelling coverage
- The insurance policy must be issued by an insurance company acceptable to BAC Home Loans and licensed or otherwise authorized by laws to conduct business in the jurisdictions in which the dwelling structure is located
- Your policy must be written by an insurance company with either the AM Best's rating of "B" or an AM Best's Financial Performance Rating of VI or better
- The name on the policy must be the same as the mortgagor/trustor/grantor of the security instrument or current owner in the case of an assumption

The policy must have the following loss payee or mortgagee clause:

> BAC HOME LOANS SERVICING, LP
> ITS SUCCESSORS AND/OR ASSIGNS A.T.I.M.A.
> P.O. BOX 961206
> FORT WORTH, TX 76161-0206

Due to changes in federal or state laws or regulations, BAC Home Loans may modify its insurance requirements to include additional types or amounts of coverage. If BAC Home Loans makes a change, we will notify you so that you may purchase the required coverage.

**EXHIBIT 4**

# Exhibit 4

9093
873510498

**Bank of America** 〰️

Home Loans

P.O. BOX 961206
FORT WORTH, TX  76161-0206

JUNE 27, 2010

005071 - 017523
LEE BERGER
ALICE BERGER
14 EVERETT RD
BUZZARDS BAY, MA 02532-3429

Loan Number:     9093-873510498
Property Address:  14 EVERETT RD
                  BUZZARDS BAY MA  02532
Property Flood Zone ID: AE
**Additional Coverage Amount Required: $107,000.00**
Coverage Period: 04/22/2010 to 04/22/2011

## SECOND NOTICE OF FLOOD INSURANCE REQUIREMENT

Dear BAC Home Loans Customer:

Thank you for sending us a current flood policy for the above referenced property. We previously mailed you a notice informing you that a comparison of the amount of flood insurance coverage to the current amount of hazard insurance coverage determined that additional flood insurance coverage is required. BAC Home Loans requires flood insurance coverage that is equal to 100% of the replacement cost of the structure based on the lesser of the current amount of hazard insurance for the property, or the maximum available coverage required by the National Flood Insurance Reform Act of 1994 (the Act), which is currently $250,000 for residential and $500,000 for commercial properties.

As of this date, we have not received an adequate response to our letter. If you have already purchased flood insurance for the required amount as identified above, or if your property is insured under a master flood insurance policy issued by your Homeowners Association, please forward a copy of your current policy so our records can be updated. The appropriate Mortgagee Clause must appear on your flood policy. This clause is included below.

*Mortgagee clause:*     BAC HOME LOANS SERVICING, LP
                       ITS SUCCESSORS AND/OR ASSIGNS A.T.I.M.A.
                       P.O. BOX 961206
                       FORT WORTH, TX 76161-0206

It is critical that a copy of your current flood insurance policy be forwarded to the address and/or fax number listed below within the next 22 days.

*By Phone:* Contact us at (866) 265-3321 with the following information:

· Insurance Agent/Carriers Name and Phone Number
· Insurance Policy Number

*By Fax:*     Fax a copy of your current flood insurance policy to: (800) 293-8158

*By Mail:*    Send us a copy of your current flood insurance policy to the following address:

              BAC HOME LOANS SERVICING, LP
              P.O. BOX 961206
              FORT WORTH, TX 76161-0206

HD312

RE: LEE BERGER
Loan Number: 873510498

If you have not already increased the amount of flood insurance coverage, we encourage you to contact your insurance agent/carrier to determine your options. In most cases, your agent or carrier can provide flood insurance at the lowest cost available through the National Flood Insurance Program (NFIP).

We previously requested verification of flood coverage that meets the requirements referenced above and advised that if we did not receive a response within 45 days, we would obtain additional flood coverage on your behalf. As indicated, it is necessary for you to respond to this notice within 22 days. If we do not have a response from you within this timeframe, we will purchase lender placed flood insurance on your behalf for the additional coverage and charge you for the amount of the annual premium of $280.88. The lender placed flood insurance would include a building coverage limit of $107,000.00 and will cover the period from 04/22/2010 to 04/22/2011. If you do not have an escrow account, we will establish one to disburse the insurance charges and increase your monthly mortgage payment accordingly. If you purchase your own insurance after 22 days from the date of this letter, we will cancel the lender-placed flood coverage and charge you a prorated premium for the time the insurance was in effect. Please note that our licensed affiliated insurance agency may receive a commission for placing this insurance.

Keep in mind, lender placed flood coverage may not be sufficient to repair, rebuild or replace your structure in the event of a loss. In addition, this type of insurance does not provide coverage for the contents of your home and the premium may be significantly higher than a flood insurance policy that is available through your own agent.

If we can answer any questions about this request or provide further assistance, please contact our Customer Service Department at (866) 265-3321, Monday through Friday, 8:00 a.m. to 9:00 p.m. Eastern Standard Time.

Sincerely,

Flood Insurance Department

EXHIBIT 5

# Exhibit 5

9093
873510498

**Bank of America** 🦅

Home Loans

P.O. BOX 961206
FORT WORTH, TX  76161-0206

JULY 22, 2010

002682 - 008381
LEE BERGER
ALICE BERGER
14 EVERETT RD
BUZZARDS BAY, MA 02532-3429

Loan Number·        9093-873510498
Property Address:   14 EVERETT RD
                    BUZZARDS BAY MA  02532
Property Flood Zone ID:       AE
Coverage Amount: $107,000.00
Coverage Period: 04/22/2010 to 04/22/2011
Flood Gap Insurance Certificate Number: Y-1250355

## NOTICE OF FLOOD INSURANCE COVERAGE

Dear BAC Home Loans Customer:

We previously mailed you a notice informing you that based on receipt of your current flood insurance policy, a comparison of the amount of flood insurance coverage to the current amount of hazard insurance coverage determined that additional flood insurance coverage is required. BAC Home Loans requires flood insurance coverage that is equal to 100% of the replacement cost of the structure based on the current amount of hazard insurance for the property, or the maximum available coverage required by the National Flood Insurance Reform Act of 1994 (the Act), which is currently $250,000 for residential and $500,000 for commercial properties.

This letter is to inform you that we have insured your property, as required by the terms of your mortgage and/or federal law (42USC 4012a, Sec. 102e).

Since we did not receive an adequate response from you, we have insured your property for $107,000.00,  and will cover the period from 04/22/2010 to 04/22/2011. We may receive compensation for services rendered and cost incurred in securing this insurance for you. In accordance with your loan documents, the total premium of $280.88 including a $0.00 policy fee have been charged to your escrow account. If you did not have an escrow account, we have established one for you and disbursed the insurance charges, and we have increased your monthly mortgage payments accordingly. Please note that our licensed affiliated agency may receive a commission for placing this insurance.

Please be reminded, lender placed flood insurance may not be sufficient to repair, rebuild or replace your property in the event of a loss. In addition, this type of insurance does not provide coverage for the contents in your home and the premium may be significantly higher than a flood insurance policy that is available through your agent.

We would like to remind you that you may purchase coverage from a company or agent of your choice. If we receive satisfactory proof of coverage for the required amount as identified above from you with an effective date the same as or prior to the effective date of the insurance we obtained, we will cancel the lender-placed flood insurance and you will not be charged for the premium. If we receive satisfactory proof of coverage from you with an effective date later than the effective date of the lender-placed flood insurance, we will still cancel the insurance, but you will be charged a prorated premium for the time the coverage was in effect.

When sending proof of coverage, your flood insurance policy must include the mortgagee clause provided below.

*Mortgagee clause:*     BAC HOME LOANS SERVICING, LP
                        ITS SUCCESSORS AND/OR ASSIGNS A.T.I.M.A.
                        P.O. BOX 961206
HD313                   FORT WORTH, TX 76161-0206

RE: LEE BERGER
  Loan Number: 873510498

It is important that a copy of your current flood insurance policy be forwarded to us.

*By Phone:* Contact us at (866) 265-3321 with the following information:

  - Insurance Agent/Carriers Name and Phone Number
  - Insurance Policy Number

*By Fax:*    Fax a copy of your current flood insurance policy to: (800) 293-8158

*By Mail:*    Send us a copy of your current flood insurance policy to the following address

        BAC HOME LOANS SERVICING, LP
        P.O. BOX 961206
        FORT WORTH, TX 76161-0206

If you have not already increased the amount of flood insurance coverage, we encourage you to contact your insurance agent/carrier to determine your options. In most cases, your agent or carrier can provide flood insurance at the lowest cost available through the National Flood Insurance Program (NFIP).

If we can answer any questions about this request or provide further assistance, please contact our Customer Service Department at (866) 265-3321, Monday through Friday, 8:00 a.m. to 9:00 p.m. Eastern Standard Time.

Sincerely,

Flood Insurance Department