# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Stanley Kolbe, | ) | |
| Individually and on Behalf of All | ) | |
| Other Persons Similarly Situated, | ) | CIVIL ACTION  NO. 11-10312 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| | ) | |
| BAC Home Loans Servicing, LP, and | ) | **JURY TRIAL DEMANDED** |
| Balboa Insurance Company, | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

## CLASS ACTION COMPLAINT

**INTRODUCTION**

1.    This action is brought by the Plaintiff, on behalf of himself and all others similarly situated, to obtain monetary and other appropriate relief for the damages sustained by the Plaintiff and the members of the Class as a result of Defendants' nationwide practice of requiring mortgagors to maintain more flood insurance coverage than is required by their mortgage agreements.

2.    Defendant BAC Home Loans Servicing, LP ("BAC Home Loans") owns and services millions of loans nationwide which are secured by real estate mortgages.  The mortgages require mortgagors to maintain insurance against

hazards such as fire. In addition, mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" also require mortgagors to maintain specific levels of flood insurance. Defendant BAC Home Loans and its affiliate, the Defendant Balboa Insurance Company ("Balboa"), have established and enforce a nationwide policy that requires and compels the mortgagors to maintain greater flood insurance coverage than required by their mortgages. This policy is directly contrary to the mortgagors' contractual obligations under the mortgages to maintain flood insurance coverage in the amounts specified in the mortgages, and contrary to BAC Home Loans' contractual rights under the mortgages to require the mortgagors to maintain flood insurance coverage in the amounts specified in the mortgages.

3. Defendants enforce their insurance coverage requirement in part by sending demand letters to mortgagors. These letters demand that the mortgagors obtain the flood insurance coverage required by Defendants. Mortgagors are told that if they fail to comply with these demands, Defendants will purchase flood insurance coverage so that the total flood insurance coverage on the real estate will meet Defendants' flood insurance coverage "requirements." This is often called "force placed insurance" or "lender placed insurance." The letters state that Defendants will charge the mortgagors for the cost of the insurance that they

purchase by either deducting the insurance premiums from the escrow accounts maintained by the mortgagors or by increasing the mortgagors' monthly mortgage payments.

4.      Defendants' demand letters also state that the insurance purchased by Defendants may be significantly more expensive and will likely provide less coverage than insurance the mortgagors might obtain on their own.  The letters also state that Defendants (or their affiliates) may profit from purchasing this insurance because this insurance may be purchased from companies affiliated with Defendants or through agencies affiliated with Defendants.

5.      After receiving the Defendants' demand letters, many mortgagors purchase the insurance coverage demanded by the Defendants.  Defendants' practices have thus caused, and continue to cause, these mortgagors to purchase insurance coverage on their real estate that is greater than required by their mortgage agreements.

6.      If mortgagors do not comply with Defendants' demands that they purchase the insurance coverage demanded by the Defendants, the Defendants purchase the additional insurance that they require, at the mortgagors' expense.

7.      Defendants' conduct, as described in detail below, constitutes breaches of the mortgage contracts.  Plaintiff seeks damages for breach of contract for himself and all other mortgagors who purchased flood insurance coverage

beyond what was required by their mortgage agreements due to the Defendants' demand that they do so, or for whom the Defendants force placed flood insurance beyond what was required by their mortgage agreements.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) because the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a State different from Defendants.

9.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a) and (c).  Defendants are subject to personal jurisdiction in this District.

## PARTIES

10.     Plaintiff Stanley Kolbe ("Plaintiff") is a resident of Atlantic City, New Jersey.  Plaintiff is the obligor on a loan secured by a mortgage on his home in Atlantic City that is serviced by Defendant BAC Home Loans.

11.     Defendant BAC Home Loans Servicing, LP ("BAC Home Loans"), formerly known as Countrywide Home Loans Servicing, LP, is a wholly owned subsidiary of Bank of America, N.A. and an indirect, wholly owned subsidiary of Bank of America Corporation.  It is a Texas limited partnership with its principal place of business in Calabasas, California.  BAC Home Loans owns and services loans secured by mortgages on real estate located throughout the United States,

including Massachusetts. BAC Home Loans conducts business in and engages in commerce in the Commonwealth of Massachusetts, and has registered with the Secretary of State to do business in the Commonwealth. BAC Home Loans frequently operates under the name "Bank of America Home Loans."

12.     Defendant Balboa Insurance Company ("Balboa") is an indirect, wholly owned subsidiary of Bank of America Corporation. Balboa is a casualty insurance company organized under the laws of the State of California. Its principal place of business is in Irvine, California. It is licensed to do business, and does business, throughout the United States, including the Commonwealth of Massachusetts.

## STATEMENT OF FACTS

### Facts Regarding Defendants' Nationwide Flood Insurance Coverage Requirements

13.     Defendants have a nationwide policy and practice of requiring mortgagors of mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" to maintain flood insurance coverage in an amount equal to the lesser of an amount established by Defendants or the maximum flood insurance coverage available under the National Flood Insurance Act of 1968, as amended by, *inter alia*, the Flood Disaster Protection Act of 1973 and the National Flood Insurance Reform Act of 1994, 42 U.S.C. §4001, et seq. (the "Flood Insurance Act") (currently $250,000 for

residential properties and $500,000 for commercial properties). That policy and practice of Defendants is hereinafter sometimes referred to as "Defendants' Flood Insurance Coverage Requirement." Defendants apply and enforce Defendants' Flood Insurance Coverage Requirement even if it exceeds the mortgagor's flood insurance coverage obligations and Defendant BAC Home Loans' flood insurance rights under the mortgage agreements.

14.     The Flood Insurance Act, at 42 U.S.C. §4012a(b)(1), prohibits federally regulated banks from issuing loans secured by mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" unless flood insurance coverage is maintained on the real estate "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of [flood insurance] coverage made available under the [Flood Insurance] Act with respect to the particular type of property [currently $250,000 for residential properties and $500,000 for commercial properties], *whichever is less*" (emphasis added). The Flood Insurance Act neither requires, nor permits Defendants to require, mortgagors to maintain greater flood insurance coverage than mandated by the Flood Insurance Act. Defendants' Flood Insurance Coverage Requirement compels Plaintiff and Class Members (defined below) to maintain greater flood insurance coverage than required by the Flood Insurance Act.

15.     Defendants enforce Defendants' Flood Insurance Coverage Requirement by demanding that the mortgagors obtain the amount of flood insurance coverage required by Defendants.  If the mortgagors fail to comply with Defendants' demand, Defendants purchase flood insurance coverage so that the total insurance coverage on the real estate will meet Defendants' Flood Insurance Coverage Requirement.  Defendants then charge the mortgagors for the cost of that additional insurance by either deducting the insurance premiums from the escrow accounts maintained by the mortgagors with Defendant BAC Home Loans or by increasing the mortgagors' monthly mortgage payments.

16.     Defendants or their corporate subsidiaries or affiliates profit when Defendants buy insurance for mortgagors.  Defendants often purchase the insurance from Defendants' own affiliated insurance companies, including Defendant Balboa, and/or place the insurance through Defendants' own affiliated insurance brokers.  Defendants' affiliated insurance brokers receive commissions on these insurance transactions and Defendants' affiliated insurance companies, including Balboa, receive the insurance premiums involuntarily paid by the mortgagors.

**Facts Regarding Defendants' Imposition of Its Insurance Coverage Requirements on Plaintiff**

17.    On October 6, 2008, Plaintiff borrowed $197,437 from Taylor, Bean & Whitaker Mortgage Corp. ("the Loan").   The Loan was documented by a promissory note (the "Note"), which was secured by a mortgage agreement ("the Mortgage Agreement" – attached hereto as Exhibit 1) providing Mortgage Electronic Registration Systems, Inc. (as nominee for Taylor, Bean & Whitaker Mortgage Corp. and its successors and assigns) with a security interest in Plaintiff's home in Atlantic City, New Jersey (the "Property").   The Mortgage Agreement is a contract that governs the rights and obligations of the parties to the contract.

18.    The Loan is guaranteed by the Federal Housing Administration ("FHA"), which is part of the United States Department of Housing and Urban Development ("HUD").   As part of its guarantee process, FHA required that the Mortgage Agreement conform to its requirements.

19.    Taylor, Bean & Whitaker Corp. declared bankruptcy and it ceased a majority of its operations on August 5, 2009.  Upon information and belief, Taylor, Bean & Whitaker Corp. no longer owns the Note and the security interest established in the Mortgage Agreement.  Plaintiff does not know the identity of the current owner of the Note and the security interest established in the Mortgage Agreement.

20.     The Loan and the Mortgage Agreement are now serviced by Defendant BAC Home Loans.  Plaintiff thus makes his monthly loan payments to Defendant BAC Home Loans.  In all of its actions described herein, BAC Home Loans acted on its own behalf and as the duly authorized agent of the owner or assignee of the Note and the Mortgage Agreement.  Defendants are contractually obligated to service the Loan and the Mortgage Agreement pursuant to the terms of the Note and the Mortgage Agreement.

21.     In all of its actions described herein, Balboa acted on its own behalf and as the duly authorized agent of BAC Home Loans and the owner or assignee of the Note and the Mortgage Agreement.

22.     The Mortgage Agreement provides that the Plaintiff, as mortgagor, must maintain flood insurance on the Property if flood insurance is required by the Secretary of Housing Urban Development ("HUD").  The Mortgage Agreement also provides that the amount of flood insurance coverage on the Property shall be the amount required by the Secretary of HUD.  As to flood insurance, the Mortgage Agreement provides as follows:

> **4.  Fire, Flood and Other Hazard Insurance**….Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary [of Housing and Urban Development].

23.     The Property is located in a geographic area that the United States government has designated as having "special flood hazards."  Accordingly, as

required by the Flood Insurance Act, the Secretary of HUD has required that the Property be covered by flood insurance.  Federal regulations set forth the amount of flood insurance required by the Secretary in 24 C.F.R. § 203.16a(c) as follows:

> The flood insurance must be maintained during such time as the mortgage is insured in an amount at least equal to either the outstanding balance of the mortgage, less estimated land costs, or the maximum amount of the [Flood Insurance Act] insurance available with respect to the property improvements, *whichever is less*. (Emphasis added)

24.    The identical requirement is set forth in FHA's Handbook 4150.1 REV-1, 4-23(A) (attached as Exhibit 2).

25.    Hence, pursuant to the above quoted provision of the Mortgage Agreement and the applicable FHA regulations, Plaintiff was required to maintain flood insurance coverage for the Property in an amount equal to the *lesser* of the outstanding balance on the Loan (less estimated land costs) or the $250,000 maximum flood insurance available under the Flood Insurance Act.

26.    At all times, from October 6, 2008, when the Plaintiff borrowed $197,437, secured by the Mortgage Agreement, through November 16, 2009, Plaintiff has maintained flood insurance coverage on the Property in excess of the outstanding balance of the Loan (and hence in excess of the outstanding balance of the Loan less estimated land costs).  That flood insurance coverage was greater than the amount of flood insurance that Plaintiff was contractually obligated to maintain on the Property pursuant to the Mortgage Agreement and the above-

referenced applicable FHA regulations.

27.    In a letter dated October 18, 2009, entitled "Important Message About

Your Loan" (attached hereto as Exhibit 3), Defendants informed Plaintiff:

> We recently discovered the flood insurance coverage on your Property
> is not adequate.  The additional coverage required in $46,000.00.
>
> * * *
>
> Because the Property is in a Flood Area, you are required by the terms
> of your mortgage/deed of trust and/or Federal law to have adequate
> flood insurance on your Property.
>
> * * *
>
> If verification of acceptable flood insurance is not received by
> 12/06/2009, BAC Home Loans Servicing, LP, a subsidiary of Bank of
> America, N.A. ("BAC Home Loans") will purchase the additional
> required flood insurance coverage (Lender-Placed Insurance) at your
> expense and charge you for the cost of the insurance.   The
> approximate cost of the Lender-Placed Insurance will be $237.19, if
> purchased.
>
> * * *
>
> Lender-Placed Flood Insurance may be purchased by us through
> agencies that are affiliates of Bank of America, N.A..  Bank of
> America, N.A. and its affiliates may receive a commission or other
> compensation in connections with obtaining this coverage.
>
> * * *
>
> The premium may be more expensive and will likely provide less
> coverage than was previously in effect or that you can obtain on your
> own.

28.     Plaintiff received a second, similar, letter from Defendants, dated November 16, 2009 (attached hereto as Exhibit 4).  It began by describing $46,000 in additional flood insurance coverage as "the amount of flood insurance our records show you need to purchase."  It then continued:

WHY HAVE YOU RECEIVED THIS LETTER?

About a month ago, we sent you a letter advising you that the Federal Flood Disaster Protection Act of 1973, as amended, and/or the terms of your mortgage/deed of trust, require that flood insurance be purchased and maintained for the entire term of your loan on improvements to your Property . . . located in a Special Flood Hazard Area (Flood Area) . . . . **Our records show that you do not have enough current flood insurance on [the Property].**  As a result, if we do not receive documentation that you do have acceptable flood insurance for the Property, we may purchase the additional flood insurance (Lender-Placed Insurance) required and charge you for the cost of the insurance. (Emphasis and capitalization in original)

29.     On information and belief, while the October 18, 2009 and November 16, 2009 letters are on the letterhead of BAC Home Loans, the letters were actually prepared and sent to Plaintiff by the Defendant Balboa.

30.     On information and belief, the decision to send the Plaintiff the October 18, 2009 and November 16, 2009 letters was made by BAC Home Loans and Balboa, pursuant to criteria established by Defendants, including "Defendants' Flood Insurance Coverage Requirement."

31.     After receiving Defendants' October 18 and November 16, 2009 letters, Plaintiff obtained on his own an additional $46,000 of flood insurance

coverage for the Property. The premium for this additional flood insurance is paid for by Plaintiff out of an escrow account that Bank of America, N.A. holds in connection with Plaintiff's mortgage.

32.   Defendants' requirement that Plaintiff purchase additional flood insurance was neither required by, nor permitted by, the Mortgage Agreement. As demonstrated above, the Mortgage Agreement requires Plaintiff to maintain flood insurance coverage of at least the outstanding balance of the Loan less estimated land costs. Plaintiff was already maintaining this level of flood insurance coverage on the Property when the Defendants sent him the October 18 and November 16, 2009 letters. Accordingly, Plaintiff was fully satisfying his flood insurance coverage obligation under the Mortgage Agreement and fully fulfilling the Defendant BAC Home Loans' flood insurance coverage rights under the Mortgage Agreement.

33.   Defendants' requirement that Plaintiff purchase additional flood insurance was also neither required by, nor permitted by, the Flood Insurance Act. As explained above, the Flood Insurance Act requires Defendant BAC Home Loans to require Plaintiff to maintain "flood insurance in an amount equal to the outstanding principal balance of the loan or the maximum limit of [flood insurance] coverage made available under the [Flood Insurance] Act with respect to the particular type of property [currently $250,000 for residential properties],

*whichever is less.*" (Emphasis added).   42 U.S.C. § 4012a(b)(1).   Since the outstanding balance on the Loan was under $250,000, the Flood Insurance Act required the Defendant BAC Home Loans to require Plaintiff to maintain flood insurance on the Property in the amount of the outstanding balance of the loan, which Plaintiff had always done.   The Flood Insurance Act neither requires, nor permits, Defendants to require mortgagors to maintain greater flood insurance coverage than mandated by the Flood Insurance Act.

34.    As a direct result of Defendants' conduct described herein, in breach of the Mortgage Agreement, Plaintiff has suffered, and without relief from this Court will continue to suffer, damages in the form of premiums for flood insurance on the Property that he has never been required to maintain under the Mortgage Agreement.

## CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action on behalf of himself and all other persons or entities in the United States:

a) who are or were obligors on loans that are or were owned or serviced by Defendant BAC Home Loans; and

b) whose loans are or were secured by mortgage agreements[1] that are or were owned or serviced by Defendant BAC Home Loans; and

c) whose mortgage agreements required flood insurance coverage in an amount that was related to the amount of the outstanding balance of the loan;

d) who received a demand from Defendants that they purchase flood insurance coverage in excess of the flood insurance coverage amounts required by the mortgage agreements; and

e) who, subsequent to receiving such demand, purchased the additional flood insurance demanded by Defendants or for whom the Defendants force placed flood insurance coverage beyond what was required by their mortgage agreements.

36.     All of the persons or entities described in the preceding paragraph are hereinafter referred to as "the Class," "Class Members" or the "Members of the Class."

37.     Defendants' conduct with respect to Plaintiff, as described herein, was consistent with and pursuant to their uniform, nationwide policy and practice to maintain and enforce Defendants' Flood Insurance Coverage Requirement, even when this requirement was not required, or permitted, by the mortgage agreements.

38.     The Members of the Class are so numerous that joinder of all

---

[1] The term "mortgage agreements" includes deeds of trust for States in which such instruments are used in a similar manner to mortgage agreements.

members is not only impracticable, it is impossible. Defendant BAC Home Loans owns and services millions of loans secured by real estate mortgages throughout the United States.

39. Plaintiff's claims are typical of the claims of the Members of the Class because, like Plaintiff, each Class Member was required by the Defendants to pay for more flood insurance coverage than the Class Member's mortgage agreement required.

40. Plaintiff will fairly and adequately protect the interests of the Members of the Class. He has retained counsel highly competent and experienced in class action litigation.

41. Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants could require Members of the Class to maintain flood insurance in excess of what was required by their mortgage agreements;

(b) whether Defendants breached the mortgage agreements of Plaintiff and the Class by demanding that Plaintiff and the Class purchase flood insurance coverage in excess of what was required by their mortgage agreements and by force placing flood insurance coverage in excess of what was required by their mortgage agreements if the mortgagor did not purchase that insurance in response

to Defendants' demand;

    (c)    the proper measure of damages.

42. The legal question of whether Defendants' conduct of demanding that mortgagors purchase flood insurance coverage in excess of what was required by their mortgage agreements breached the underlying mortgage agreements of Plaintiff and Class Members is a question of basic contract law that would be the same under the laws of each state in which Class Members reside.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impossible for Members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action. The Members of the Class can be identified from Defendants' business records.

44. The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to the individual Class members which would establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual Members of the Class could as a practical matter be dispositive of the interests of the other Class Members not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

## COUNT I – BREACH OF CONTRACT

45.     Plaintiff incorporates the above paragraphs by reference.

46.     The mortgage agreements of Plaintiff and the Class are binding contracts setting out the maximum amount of flood insurance that Plaintiff and the Class were required to maintain.

47.     By requiring Plaintiff and Class Members to buy flood insurance coverage in excess of the coverage required by their mortgage agreements, Defendants violated and breached the mortgage agreements.

48.     As a direct result of Defendants' breach of contract, Plaintiff and the Class have been damaged.

49.     Defendants are liable to Plaintiff and the Class Members for the cost of the flood insurance coverage paid for by Plaintiff and the Class Members that exceeded the amount of insurance that the Plaintiff and Class Members were required to maintain pursuant to their mortgage agreements.

50.     Unless Defendants are permanently enjoined by this Court from enforcing Defendants' Flood Insurance Coverage Requirement, Plaintiff and the Members of the Class will continue to be damaged.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

51.    Plaintiff incorporates the above paragraphs by reference.

52.    The mortgage agreements of Plaintiff and the Class are binding contracts.

53.    Each of those contracts contains an implied covenant of good faith and fair dealing.

54.    The implied covenant of good faith and fair dealing required each party to the contract to be honest in its dealings and not purposefully to take actions that would unfairly prevent other parties from enjoying their rights or benefits under the contract or disappoint their reasonable expectations.

55.    By requiring Plaintiff and the Class to maintain and pay for flood insurance coverage in excess of the coverage required by their mortgage agreements, Defendants acted in bad faith and breached the implied covenant of good faith and fair dealing contained in the mortgage agreements.

56.    As a direct result of Defendants' breach of the implied covenant of good faith and fair dealing contained in the mortgage agreements, Plaintiff and the Class have been damaged.

57.    Defendants are liable to Plaintiff and the Class Members for the cost of the flood insurance coverage purchased by Plaintiff and the Class Members that exceeded the amount of flood insurance that the Plaintiff and Class Members were

required to maintain pursuant to their mortgage agreements.

58.     Unless Defendants are permanently enjoined by this Court from enforcing Defendants' Flood Insurance Coverage Requirement, the Plaintiff and the Members of the Class will continue to be damaged.

**JURY DEMAND**

59.     Plaintiff demands a trial by jury on all claims so triable.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.     An order allowing this action to proceed as a class action under Fed. R. Civ. P. 23;

2.     Determining that Defendants' conduct as described herein, and as will be established at trial, breached the mortgage agreements of the Plaintiff and the Members of the Class;

3.     Determining that Defendants' conduct as described herein, and as will be established at trial, breached the implied covenant of good faith and fair dealing between Defendants and the Plaintiff and the Members of the Class;

4.     Awarding Plaintiff and Members of the Class damages in an amount to be proven at trial, plus interest and costs;

5.      Entering a permanent injunction enjoining Defendants from requiring Plaintiff and the Class Members to maintain more flood insurance coverage than required by their mortgage agreements;

6.      Awarding counsel for Plaintiff and the Class their reasonable attorneys fees and expenses; and

7.      Any such other and further relief which the Court finds just and proper.

Dated:  February 23, 2011

                              Respectfully submitted,

                              **/s/ Edward F. Haber**
                              Edward F. Haber (BBO# 215620)
                              Michelle H. Blauner (BBO# 549049)
                              Robert E. Ditzion (BBO# 660962)
                              **SHAPIRO HABER & URMY LLP**
                              53 State Street
                              Boston, MA  02109
                              (617) 439-3939 – Telephone
                              (617) 439-0134 – Facsimile
                              ehaber@shulaw.com
                              mblauner@shulaw.com
                              rditzion@shulaw.com

                              ATTORNEYS FOR THE PLAINTIFF
                              AND THE CLASS