United States District Court
District of Massachusetts

```
_____
                               )
SUSAN LASS, as an individual and )
as a representative of the      )
classes,                        )
         Plaintiff,             )      Civil Action No.
                                )      11-10570-NMG
         v.                     )
                                )
BANK OF AMERICA, N.A., successor )
by merger to BAC HOME LOANS     )
SERVICING, L.P.,                )
         Defendant.             )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This is a putative class action lawsuit brought by plaintiff
Susan Lass against Bank of America, N.A. and BAC Home Loans
Servicing, L.P. (collectively, "BOA" because the entities have
merged since the filing of the complaint) for breach of her
mortgage contract, breach of the implied covenant of good faith
and fair dealing, unjust enrichment, a violation of the Real
Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.
("RESPA") and breach of fiduciary duty. Lass alleges that
defendants breached her mortgage contract by requiring her to
purchase more flood insurance than was required under the terms
of her mortgage (referred to as "force-placed insurance").
Before the Court are defendants' motions to dismiss Lass's
complaint and first amended complaint.

-1-

I.   **Factual Background**

On February 18, 1994, Lass obtained a loan from BOA for $40,000 secured by a mortgage on her home.  The loan is being serviced by BAC Home Loans Servicing, L.P..  Lass's home is located in an area in Rehoboth, Massachusetts that is designated as a special flood hazard area under the National Flood Insurance Act, 42 U.S.C. §§ 4001-4129 ("NFIA").  The NFIA prohibits federally-regulated lenders from making, increasing, extending or renewing any loan secured by real estate in a special flood hazard area in which flood insurance is available unless the property is covered by flood insurance

> in an amount at least equal to the outstanding principal
> balance of the loan or the maximum limit of coverage made
> available under the Act with respect to the particular
> type of property, whichever is less.

Id. § 4012a(b)(1).  If the lender is found to have a pattern or practice of non-compliance, it is subject to civil penalties. Id. § 4012a(f).

Lass's mortgage requires her to maintain flood insurance "in the amounts and for the periods" required by her lender.  Her original lender, Residential Mortgage Corporation ("RMC") required Lass to purchase insurance in the amount of her principal balance, which she did.  Her insurance premiums were escrowed and she was required to pay a portion of them in advance at the time her loan was executed.  In 2007, she voluntarily elected to increase her coverage to $100,000.

On November 16, 2009, however, and again on December 14, 2009, Lass received a letter from BOA (RMC's successor to the mortgage) informing her that 1) she was required to increase her flood insurance to $145,086 to cover the replacement value of the improvements to her property and 2) if she did not comply before January 4, 2010, the insurance would be purchased for her and she would be charged for that purchase. Plaintiff subsequently received a third letter, dated January 10, 2010, stating that because she had not purchased the additional flood insurance, BOA had purchased it for her and the $748 premium would be paid out of her escrow account along with a possible fee for the purchase. BOA renewed the policy in November, 2010 and March, 2011.

At the time BOA force-placed the flood insurance policy, Lass maintained her own $100,000 policy. Lass also alleges that defendants increased that policy by $10,000 without her permission. According to BOA, in March, 2011, it refunded the two insurance premiums that it had charged her but Lass claims that only two of three charges were refunded. Her mortgage payments have, however, remained higher than before the force-placed insurance.

Lass asserts that defendants breached her mortgage contract, acted in bad faith by requiring the increased amount of insurance coverage and were unjustly enriched because they earned a commission on the purchase of the force-placed insurance.

-3-

II.  **Procedural History**

Lass filed her complaint on April 1, 2011.  Defendants thereafter filed a motion to dismiss on May 10, 2011.  On May 24, 2011, the Court allowed a motion to consolidate the case with related cases <u>Berger</u> v. <u>Bank of America, et al</u> (No. 10-cv-11583) and <u>Kolbe</u> v. <u>BAC Home Loans Servicing, L.P., et al.</u> (No. 11-cv-10312).  At a motion hearing on June 8, 2011, however, the <u>Lass</u> case was severed but the plaintiffs in the separate actions agreed to coordinate discovery.

Instead of opposing the pending motion to dismiss, Lass has filed an amended complaint in which she alleges a new cause of action for breach of fiduciary duty/misappropriation of funds held in escrow.  Lass did not move for leave to file the amended complaint but the Court will, nevertheless, treat the amended complaint as including a motion for leave to amend and allow the motion.  On June 27, 2011, defendants filed a motion to dismiss the amended complaint which plaintiff has opposed.

III. **Motion to Dismiss the Original Complaint**

Because plaintiff has filed a first amended complaint which defendants have moved to dismiss, defendants' motion to dismiss the original complaint will be denied as moot.

IV.   __Motion to Dismiss the First Amended Complaint__

   A.   __Legal Standard__

   To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court may look only to the facts alleged
in the pleadings, documents attached as exhibits or incorporated
by reference in the complaint and matters of which judicial
notice can be taken.  Nollet v. Justices of the Trial Court of
Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d
1127 (1st Cir. 2000).  Furthermore, the Court must accept all
factual allegations in the complaint as true and draw all
reasonable inferences in the plaintiff's favor.  Langadinos v.
Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the
facts in the complaint are sufficient to state a cause of action,
a motion to dismiss the complaint must be denied.  See Nollet, 83
F. Supp. 2d at 208.

   Although a court must accept as true all of the factual
allegations contained in a complaint, that doctrine is not,
however, applicable to legal conclusions.  Ashcroft v. Iqbal, 129
S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal
elements, supported by mere conclusory statements, do not suffice
to state a cause of action.  Id.  Accordingly, a complaint does

not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

### B.   Breach of Contract

Plaintiff alleges that defendants breached her mortgage contract by requiring her to maintain flood insurance in an amount greater than required by the NFIA or her mortgage agreement and greater than defendants' financial interest in the property. Defendants respond that the plain language of the mortgage gives BOA the discretion to determine the amount of flood insurance that Lass must maintain and, as such, her breach of contract claim fails.

The relevant portion of Lass's mortgage agreement states:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. . . . If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

Paragraph 5 (emphasis added).

BOA argues that Lass's mortgage gives it clear and unambiguous discretion to determine how much flood insurance Lass must carry and the right to purchase that insurance should plaintiff fail to do so. It asserts that this case is analogous to Custer v. Homeside Lending, Inc., in which the Alabama Supreme

-6-

Court concluded that the lender had the right to force-place flood insurance in an amount greater than the outstanding mortgage balance.  See 858 So. 2d 233, 237, 246-47 (Ala. 2003). In Custer, the mortgage stated that the mortgagor would keep the secured property

> insured as may be required from time to time by the Mortgagee against loss by fire and other hazards, casualties and contingencies in such amounts and for such periods as may be required by the Mortgagee[.]

Id. at 237.  The court construed that language as giving the insurer discretion to change the amount of required insurance at any time.  This Court finds the logic of that case instructive and concludes that the phrase "in the amounts and for the periods that Lender requires" in Lass's mortgage means that the lender may increase the flood insurance requirement beyond that required at the time the mortgage was executed.  See id.

Plaintiff cites Hofstetter v. Chase Home Finance, LLC, 751 F. Supp. 2d 1116, 1120-21 (N.D. Cal. 2010), for the proposition that, although the mortgage stated that flood and hazard insurance "shall be maintained in the amounts and for the periods that we require", the mortgagee did not have a right to increase unilaterally the amount of required flood insurance.  That decision is inapposite here, however, because it is based upon a regulation interpreting the Truth in Lending Act that deals with home equity lines of credit in particular.

Plaintiff next points out that her mortgage differs from the
Fannie Mae/Freddie Mac Single Family Uniform Instrument for
Massachusetts, which includes the phrase: "What Lender requires
pursuant to the preceding sentences [relating to insurance] can
change during the term of the Loan."  Despite the fact that
Lass's mortgage does not include such explicit language, the
Court concludes that paragraph 5 of plaintiff's mortgage
unambiguously gives the lender the right to adjust the insurance
requirement at any time.

Finally, plaintiff contends unconvincingly that the lender's
right to obtain coverage to protect its rights in the property
means that BOA was authorized to purchase insurance covering only
the outstanding principal balance on her loan.  To the contrary,
the mortgage clearly gives the lender the discretion to determine
the amount of flood insurance it deems will protect its rights in
the property.

Lass relies on a "Flood Insurance Notification" ("the
Notification") that she signed on the same day as her mortgage
agreement, which provides that

> at the closing the property you are financing must be
> covered by flood insurance in the amount of the principle
> amount financed, or the maximum amount available,
> whichever is less.  This insurance will be mandatory
> until the loan is paid in full.

That notification appears to be part of the mortgage contract,
similar to a rider, although it is not listed in the mortgage as

-8-

an incorporated rider.

The Court construes the Notification as establishing the amount of flood insurance due at closing and setting a minimum, but not a maximum amount of coverage.  The notification can easily be read in conjunction with the mortgage which gives the lender the discretion to set the required amount of flood insurance.  The specific trumps the general where two provisions clearly conflict and, here, the provisions can be read together logically without conflict.  See Carnaci v. Pillarisetty, No. 011345, 2006 WL 3292762, at *8 (Mass. Super. Oct. 25, 2006).

In sum, plaintiff's mortgage unambiguously gave defendants the discretion to determine the appropriate amount of flood insurance and to purchase that insurance on plaintiff's behalf should she fail to do so.  Thus, Lass's claim for breach of contract will be dismissed.  See Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp. 2d 23, 28 (D. Mass. 2006) ("Interpretation of an unambiguous contract is a matter of law and may, therefore, be done at the motion to dismiss stage.").

## C.   Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing, which is implied in every contract in Massachusetts, requires parties to a contract "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract[.]" Hawthorne's, Inc. v. Warrenton Realty, Inc., 606 N.E. 2d 908, 914

(Mass. 1993).  The purpose of the implied covenant is

> to ensure that neither party interferes with the ability
> of the other to enjoy the fruits of the contract and that
> when performing the obligations of the contract, the
> parties remain faithful to the intended and agreed
> expectations' of the contract.

FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 99 (1st Cir. 2009).

Plaintiff argues that defendants breached the covenant of good faith and fair dealing by 1) violating the express terms of the contract, 2) misrepresenting federal flood insurance requirements to plaintiff, 3) exercising its discretion to plaintiff's detriment and its own benefit by purchasing excessive insurance and 4) back-dating the force-placed insurance to November, 2009.

Defendants argue that there is no evidence that BOA acted in bad faith with respect to its insurance requirement because the amount was based on the amount of plaintiff's hazard insurance and the Federal Emergency Management Agency ("FEMA") policy that homeowners should maintain flood insurance equal to the full replacement value of the property.  The Court concurs with the holding in Custer, in which the court concluded that requiring insurance coverage equal to the full replacement value of the property was not unreasonable and was, therefore, not evidence of bad faith.  858 So.2d at 244.

Furthermore, as explained by the Court's preceding analysis

-10-

of Lass's contract, BOA did not misrepresent federal law when it stated in a letter in November, 2009 that she was required by the terms of her mortgage and/or federal law to have adequate flood insurance on her property.  Both the mortgage and federal law require her to maintain adequate flood insurance and give the lender the discretion to determine that adequate amount, provided that it is more than the minimum established by the NFIA.  See 42 U.S.C. § 4012a(b)(1).

For those reasons, plaintiffs' claim for breach of the covenant of good faith and fair dealing is without merit and will be dismissed.

### D.   RESPA

Defendants maintain that plaintiff's RESPA claim fails because the sections she references, i.e. 12 U.S.C. §§ 2607(a)-(b), apply only to fees incurred in connection with "real estate settlement services" and Lass's force-placed flood insurance coverage is not a "settlement service".

Under RESPA, the term "settlement service" includes

any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of

the processing, and closing or settlement[.]

12 U.S.C. § 2602(3).  The Code of Federal Regulations more specifically defines settlement services as

> any service provided in connection with a prospective or actual settlement, including . . . [the] [p]rovision of services involving hazard, flood, or other casualty insurance or homeowner's warranties.

24 C.F.R. § 3500.2.  A "settlement" is "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan", i.e. the "closing" or "escrow".  24 C.F.R. § 3500.2(b).

Although the Federal Regulations indicate that the provision of flood insurance constitutes a settlement service, federal courts have held that fees charged long after a loan's closing are not "in connection with a real estate settlement" and, as such, do not fall within RESPA's scope.  For example, in Bloom v. Martin, 77 F.3d 318, 321 (9th Cir. 1996), the Ninth Circuit concluded that demand and reconveyance fees assessed when the mortgage is paid off do not constitute settlement services. Similarly, in Greenwald v. First Federal Savings and Loan Association, 446 F. Supp. 620, 625 (D. Mass. 1978), aff'd, 591 F.2d 417 (1st Cir. 1979), another judge of this Court held that interest payments on escrow accounts are not a settlement practice under RESPA because they "can continue long after the closing of the mortgage transaction and . . . during the entire life of the mortgage."

-12-

In this case, the alleged fees and kickbacks occurred in connection with force-placed insurance purchased 15 years after Lass's mortgage was executed.  The stated purpose of RESPA makes it clear that the statute was not intended to regulate fees or kickbacks that are completely unrelated to the settlement process.  See 12 U.S.C.A. § 2601(b).  Instead, the statute's purpose is to effect changes in the settlement process that will result

> in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services[.]

Id. § 2601(b)(2).  Consequently, the Court finds that RESPA does not apply to the allegations in this case.

Plaintiff contends that actions related to the provision of flood insurance are settlement services because flood insurance was required in order for her to close the loan.  She points out that the Flood Insurance Notification she signed at closing required her to have flood insurance and cites a case in which the court held that the imposition of personal mortgage insurance ("PMI") was a settlement service because "without PMI, the transaction can not (sic) close."  Munoz v. PHH Corp., 659 F. Supp. 2d 1094, 1099 (E.D. Cal. 2009).

While those facts suggest that Lass's initial purchase of flood insurance was related to the settlement process, the Court finds that the 15-year period between the closing and the forced-

placing of flood insurance renders the latter too attenuated from the closing for it to constitute a settlement-related service. The Court does not, however, rule out the possibility that there may be circumstances where the force-placing of flood insurance closer in time to the closing would be considered to be "in connection with a real estate settlement."

Defendants also assert that Lass's complaint was untimely because it was filed more than one year after the alleged violation occurred. See 12 U.S.C.A. § 2614. Defendants claim that her cause of action accrued, at the latest, on January 10, 2010, when BOA told Lass that it had purchased flood insurance on her behalf. The Court concurs that plaintiff's RESPA cause of action is, indeed, barred by the one-year statute of limitations.

For those reasons, Lass's has failed to state a claim under RESPA upon which relief can be granted.

### E.   Unjust Enrichment

Plaintiff alleges that defendants were unjustly enriched by receiving kickbacks and commissions in connection with the forced-placement of flood insurance on her property.  To prevail on a claim for unjust enrichment in Massachusetts, plaintiff must show

    (1)  a benefit conferred upon defendant by plaintiff;

    (2)  an appreciation or knowledge of the benefit by
         defendant; and

    (3)  the acceptance or retention of the benefit by

-14-

> defendant under circumstances which make such
> acceptance or retention inequitable.

Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 294 (D.
Mass. 2009).

Defendants deny that they received any commission in
connection with the forced-placement of flood insurance but that,
even if they did, plaintiff's claim for unjust enrichment fails
because BOA's assessment of a fee would not be unjust due to the
fact that Lass was given multiple opportunities to purchase the
insurance on her own and was warned that lender-purchased
insurance might be more expensive.  Defendants also argue that
the benefit alleged is speculative and unsupported by any factual
allegations because Lass doesn't explain what sort of (or how
much) compensation defendants allegedly earned.  Indeed, there is
no commission or fee listed on the insurance bills that Lass
includes with her first amended complaint.

The Court agrees with defendants that plaintiff's
allegations do not establish a claim for unjust enrichment.
BOA's retention of a commission with respect to the purchase of
insurance on plaintiff's behalf was not inequitable due to the
undisputed fact that plaintiff received multiple notices that if
she did not purchase the required insurance, it would be
purchased for her and a fee might be assessed for that purchase.
By failing to purchase the insurance on her own, plaintiff
impliedly accepted the forced-placement of insurance, including

any fee associated therewith.  Lass's claim for unjust enrichment will, therefore, be dismissed.

### F.   Breach of Fiduciary Duty/Misappropriation of Funds Held in Escrow

In her amended complaint, Lass brings a new claim for breach of fiduciary duty or misappropriation of funds held in escrow based on BOA's use of funds in her escrow account to pay for the excess flood insurance and the commission allegedly charged by BOA or its affiliate.  Plaintiff's mortgage provides that a portion of her monthly mortgage payments are to be held in escrow to pay "taxes, insurance premiums and other charges".

To prevail on a claim for breach of fiduciary duty, a plaintiff must show 1) existence of a fiduciary duty arising from a relationship between the parties, 2) breach of that duty, 3) damage and 4) causation.  Hanover Ins. Co. v. Sutton, 705 N.E.2d 279, 288-89 (Mass. App. Ct. 1999).  Defendants argue that Lass did not adequately plead the existence of a fiduciary duty because, under Massachusetts law, a lender does not owe a fiduciary duty to a borrower.  Corcoran v. Saxon Mortg. Servs., Inc., No. 09-11468, 2010 WL 2106179, *4 (D. Mass. May 24, 2010).

Plaintiff responds that funds held in escrow are held in trust and that the holder, therefore, owes fiduciary duties to the client.  Carpenter v. Suffolk Franklin Sav. Bank, 291 N.E. 2d 609, 614 (Mass. 1973).  Indeed, despite the general rule that a mortgagee does not owe a fiduciary duty to a mortgagor,

"[m]ismanagement of an escrow account may give rise to a claim for breach of fiduciary duty by a mortgagor against a mortgagee." Vician v. Wells Fargo Home Mortg., No. 2:05-CV-144, 2006 WL 694740, at *7 (N.D. Ind. Mar. 16, 2006).  In the Vician case, the court found that plaintiff had adequately alleged a claim for breach of fiduciary duty with respect to money held in escrow for plaintiffs by alleging that defendant charged excessive force-placed insurance premiums and finance charges to plaintiff's escrow account.  Id. at *8.

Plaintiff also contends that using the escrow funds to generate profits for itself or its affiliate is self-dealing and violates BOA's fiduciary duty.  The Massachusetts Supreme Judicial Court has held that such a theory is viable:

> self-dealing by an escrow holder, such as an escrow holder's unauthorized collection from escrowed funds of a debt owed by a party to the escrow agreement, would be a breach of duty[.]

Matter of the Discipline of Two Attorneys, 660 N.E.2d 1093, 1098 (Mass. 1996).

Lass's mortgage does not specifically address whether BOA may charge a fee or commission for the purchase of force-placed insurance or whether such a fee can be paid out of Lass's escrow account.  That level of specificity was not necessary, however, because Lass's escrow account was established for the express purpose of paying insurance premiums.  Thus, it can be inferred that any fees or charges associated with the payment of those

premiums could also be withdrawn from the escrow account.  As such, the Court finds that plaintiff has failed to state a viable claim for breach of fiduciary duty or misappropriation.

### ORDER

In accordance with the foregoing,

1)   defendants' motion to dismiss plaintiff's original complaint (Docket No. 15) is **DENIED** as moot;

2)   plaintiff's implied motion to file an amended complaint (Docket No. 24 in <u>Berger et al.</u> v. <u>Bank of America, N.A. et al.</u>, No. 10-cv-11583) is **ALLOWED**;

3)   defendants' motion to dismiss plaintiff's amended complaint (Docket No. 46 in <u>Berger et al.</u> v. <u>Bank of America, N.A. et al.</u>, No. 10-cv-11583) is **ALLOWED**; and

4)   the parties are instructed to file any future pleadings related to this case in <u>Lass</u> v. <u>Bank of America, N.A. et al</u>, No. 11-cv-10570, rather than in <u>Berger</u> v. <u>Bank of America, et al</u>, No. 10-cv-11583, because the two cases are no longer consolidated.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 10, 2011